## SMITH *v.* WHITNEY & Others.

APPEAL FROM AND ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA

Argued December 11, 1885.—Decided January 4, 1886.

This court has appellate jurisdiction, under the act of March 3, 1885, ch. 355, of a judgment of the Supreme Court for the District of Columbia, dismissing a petition for a writ of prohibition to a court martial convened to try an officer for an offence punishable by dismissal from the service, and consequent deprivation of a salary which during the term of his office would exceed the sum of $5000.

Where an inferior court has clearly no jurisdiction of a suit, and the defendant therein has objected to its jurisdiction at the outset, and has no other remedy, he is entitled as matter of right to a writ of prohibition from a court having authority to grant it; and a refusal to grant it, where all the proceedings appear of record, may be reviewed on error.

*It seems*, that a writ of prohibition should issue from the law side of a court having both common law and equity powers.

Whether the Supreme Court of the District of Columbia has power to issue a writ of prohibition to a court martial—*quære*.

A writ of prohibition does not lie to the Secretary of the Navy convening a naval court martial.

A writ of prohibition does not lie to a court martial to correct mistakes in the decision of questions of law or fact within its jurisdiction.

A writ of prohibition will not be issued to prohibit a naval court martial from trying a naval officer, being paymaster general and chief of a bureau in the Department of the Navy, upon a charge of "scandalous conduct tending to the destruction of good morals," with specifications alleging that as such chief of bureau he made contracts and payments in disregard of the interests of the government, and to promote the interests of contractors, in violation of law, and to the great scandal and disgrace to the service, and injury of the United States; and upon an additional charge of "culpable inefficiency in the performance of duty," with specifications setting forth acts similar to those specified under the first charge.

A naval court martial, which has returned its proceedings to the Secretary of the Navy, and been adjourned by him until further order, may be reconvened by him to reconsider those proceedings.

This was a petition, filed September 21, 1885, praying the Supreme Court of the District of Columbia to issue a writ of prohibition to the Secretary of the Navy, and to a general court-martial of naval officers convened by his order of June 25, 1885, to try the petitioner, a pay inspector in the navy, and, by appointment of the President, confirmed by the Senate, of the date of June 27, 1882, " Chief of the Bureau of Provisions and Clothing and Paymaster General in the Department of the Navy, with the relative rank of Commodore," upon certain charges and specifications, a copy of which was made part of the petition.

The first of those charges was " Scandalous conduct tending to the destruction of good morals," under which were fourteen specifications, alleging that " the said Joseph A. Smith, then being a pay inspector in the United States navy, and having been theretofore, as such officer of the navy, duly appointed Chief of the Bureau of Provisions and Clothing, with the title of Paymaster General, in the Department of the Navy," and being responsible for the proper and reputable administration thereof, and it being his duty to protect the interests of the

government in the making of contracts for supplies for the navy, did various acts, which were set forth in different forms and with much detail, but the substance of which was that he enlarged existing contracts, so as to include at the contract price additional supplies not required by the necessities of the service, without consulting the Secretary of the Navy or the sureties on the contractor's bond, or giving any opportunity for competition, and when the market was falling; extended the time of delivery of supplies contracted for, thereby necessitating the acceptance of supplies of an inferior quality; falsified a copy of a contract, and thereby enabled the contractor to obtain payment at a place other than that required by the contract; and by directions and instructions to pay-officers caused to be paid claims which had been refused by other pay-officers, and which, as he knew, had been declared illegal by the accounting officials of the Treasury; and by so causing pay-officers to pay these claims, and to pay them out of appropriations for years other than those in which the contracts were made, greatly embarrassed those officers in the performance of their duties; and thereby wilfully and knowingly, in disregard of his duties and responsibilities as chief of bureau, subordinated the interests of the government to those of the contractors, in violation of law, and "to the great scandal and disgrace of the service, and the injury of the United States."

The second charge was "Culpable inefficiency in the performance of duty," under which were four specifications, alleging that he failed in his duty in not obliging contractors to comply with the terms of their contracts, and in allowing deliveries to be made after the time for delivery had expired; and also in purchasing more supplies than the current needs of the navy required, and in purchasing unfit supplies, and in not affording due opportunity for competition.

In the application for a writ of prohibition, the petitioner alleged that, immediately upon the organization of the court martial, he objected that it had no jurisdiction of him, or of the charges and specifications against him, or of the subject-matter contained in them, or any part thereof; but the court martial overruled all his objections to its jurisdiction, and proceeded to

hear evidence on the charges, and to try him thereon. He further alleged that none of the charges or specifications in any degree arose out of or were involved in any case arising in the land or naval forces of the United States, or in the militia, but all, as appeared on their face, pertained exclusively to duties required of and performed by him in the exercise of a purely civil office, and under a civil commission; that none of the specifications charged him with the violation of any law of the United States, or of any rule of procedure in the Navy Department, or of any order of the Secretary of the Navy; that each of the acts complained of had been approved by the late Secretary of the Navy in the lawful exercise of his discretionary power over the subject, and that the exercise of his discretion could not be reviewed by his successor, or by a court martial; that throughout the trial the petitioner insisted on his objections to the jurisdiction; that after the conclusion of the testimony and arguments the court martial went into secret session, and excluded him and his counsel from its presence, and, as he was informed and believed, rendered some judgment adverse to him, and submitted it to the Secretary of the Navy for his approval, but it had not been approved; that all the proceedings at the trial, with the finding and judgment of the court, were made up and signed by the judge advocate, and returned to the exclusive custody of the Secretary of the Navy, and the court discontinued its sessions, and adjourned without day; that afterwards the Secretary of the Navy made an order, the terms of which were unknown to the petitioner, directing the court martial to reconvene on September 25, 1885, and to take additional action in the matter of the charges and specifications and evidence submitted to it as aforesaid; that it was about to reconvene accordingly, and, without permitting the presence of the petitioner or his counsel, to reconsider the evidence and the principles of law involved in his trial, and to reëxamine and readjudge his case; that the proceedings about to be taken by the court martial were not only unauthorized for want of jurisdiction, but would deprive him of the right of trial by jury, and put him twice in jeopardy for the same offence, in violation of the Constitution of the United States;

and that he was without remedy, except by the writ of prohibition.

On September 23, the petitioner moved for an order upon the defendants to show cause why a writ of prohibition should not issue as prayed for; and it was ordered that the petition be entertained and certified for hearing in the first instance to the court in general term.

On September 24, the Secretary of the Navy filed a plea, averring that the court ought not to hear or take further cognizance of the petition and proceedings, because their object and purpose were "to prohibit and restrain him from the exercise of powers and duties appertaining to his said office of Secretary of the Department of the Navy, whereas it is beyond the jurisdiction of this court and the judicial power of the United States to restrain or otherwise intermeddle with the exercise of the said powers and duties, which belong to and form a part of the political powers and duties of the government of the United States."

On the same day, the members of the court martial filed a plea and answer, in which they "say that they are advised that this court has no jurisdiction to arrest by writ of prohibition any proceeding they may take in the court martial referred to in the said petition;" and "not waiving in any wise, but insisting on their jurisdictional exception or plea, answering" admitted that the petitioner pleaded to the jurisdiction of the court martial, and that his plea was overruled; but alleged that he was subject to its jurisdiction, and that there was nothing in the legislation of Congress, creating the office of paymaster-general of the navy, manifesting an intention to withdraw the incumbent of that position from amenability to a court martial for offences committed while exercising the same; that the first charge and the specifications pursuant thereto were founded on the twenty-second of the Articles for the Government of the Navy, contained in § 1624 of the Revised Statutes, and on § 127 of the Orders, Regulations and Instructions for the Administration of Law and Justice in the United States Navy, which prescribes that "when the offence is a disorder or neglect not specially provided for, it should be

charged as scandalous conduct tending to the destruction of good morals;" and the second charge and the specifications pursuant thereto were founded on the ninth paragraph of the eighth Article for the Government of the Navy; that the question whether the acts and omissions charged against the petitioner were offences was a matter for the exclusive decision of the court martial; and that the court martial did not and could not adjourn itself without day, but, as appeared by orders, copies of which were produced, was by order of the Secretary of the Navy of August 11 "adjourned until further orders," and by his order of September 16 directed to reassemble on September 25; and concluded by praying to be dismissed with costs.

On September 25 the petitioner filed a replication, in which he "joins issue with the defendants upon the return and answer filed to the petition for the writ of prohibition;" and upon a hearing in general term the court entered the following judgment: "The court being of opinion that it has not jurisdiction of the matter complained of, it is therefore considered that the petition be and it is hereby dismissed, with costs, to be taxed by the clerk."

The petitioner in open court prayed and was allowed an appeal from that judgment, and also sued out a writ of error to reverse it.

*Mr. Jeff Chandler* for appellant and plaintiff in error. *Mr. Eppa Hunton* was with him on the brief.

*Mr. Assistant Attorney-General Maury* for appellees and defendants in error.

Mr. Justice GRAY delivered the opinion of the court. After stating the facts as above reported, he continued:

The final judgment or decree of the Supreme Court of the District of Columbia in any case in which the matter in dispute, exclusive of costs, exceeds the sum of five thousand dollars, may be reviewed and reversed or affirmed in this court upon writ of error, if the judgment is at law, or upon appeal,

if the decree is in equity. Rev. Stat. §§ 691, 692, 705; Rev. Stat. D. C. §§ 846, 847; Act of March 3, 1885, ch. 366, 23 Stat. 443.

The objection, founded on *Kurtz* v. *Moffitt,* 115 U. S. 487, and cases there cited, that this court has no appellate jurisdiction of the present case, because there is nothing in dispute the value of which can be estimated in money, cannot be sustained. The matter in dispute is whether the petitioner is subject to a prosecution which may end in a sentence dismissing him from the service, and depriving him of a salary, as paymaster general during the residue of his term as such, and as pay inspector afterwards, which in less than two years would exceed the sum of five thousand dollars. Rev. Stat. §§ 1556, 1565, 1624, arts. 8, 22, 48, 53. The case cannot be distinguished in principle from those in which it has been held that a judgment awarding a peremptory writ of mandamus to admit one to an office, or a judgment of ouster from an office, might be reviewed by this court upon writ of error, if the salary during the term of the office would exceed the sum named in the statute defining its appellate jurisdiction. *Columbian Ins. Co.* v. *Wheelwright,* 7 Wheat. 534; *United States* v. *Addison,* 22 How. 174.

It is often said that the granting or refusing of a writ of prohibition is discretionary, and therefore not the subject of a writ of error. That may be true, where there is another legal remedy, by appeal or otherwise, or where the question of the jurisdiction of the court whose action is sought to be prohibited is doubtful, or depends on facts which are not made matter of record, or where a stranger, as he may in England, applies for the writ of prohibition. But where that court has clearly no jurisdiction of the suit or prosecution instituted before it, and the defendant therein has objected to its jurisdiction at the outset, and has no other remedy, he is entitled to a writ of prohibition as matter of right; and a refusal to grant it, where all the proceedings appear of record, may be reviewed on error. This is the clear result of the modern English decisions, in which the law concerning writs of prohibition has been more fully discussed and explained than in the older authorities. *In*

re *Forster*, 4 B. & S. 187, 199 ; *Mayor &c. of London* v. *Cox*, L. R. 2 H. L. 239, 280 ; *Worthington* v. *Jeffries*, L. R. 10 C. P. 379, 380 ; *Chambers* v. *Green*, L. R. 20 Eq. 552, 555. See also *Weston* v. *City Council of Charleston*, 2 Pet. 449, reversing on error *S. C.*, Harper, 340.

The petitioner in the present case objected, at the very beginning of the proceedings before the court martial, that it had no jurisdiction to try him on the charges laid before it; and the facts upon which his objection to its jurisdiction are based, as well as the final judgment dismissing his petition for a writ of prohibition, appear of record. The case is therefore within the appellate jurisdiction of this court.

The Supreme Court of the District of Columbia having both common law and equity powers, it would seem that the proceedings in this case must be considered as on the common law side of that court, and that the proper mode of invoking the appellate jurisdiction of this court is by writ of error. In England, from long before the Declaration of Independence, writs of prohibition have usually issued from the courts of common law, and do not appear to have issued from a court of chancery in any case in which a court of law might issue them, except during vacation, when the courts of common law were not open. 2 Hale P. C. 147; Lord Holt, in *Blackborough* v. *Davis*, 1 P. Wms. 41, 43 ; *Anon.*, 1 P. Wms. 476 ; *Montgomery* v. *Blair*, 2 Sch. & Lef. 136 ; *In re Foster*, 24 Beavan, 428 ; *In re Bateman*, L. R. 9 Eq. 660. And in this country, so far as we are informed, these writs have never been issued but by a court of common law jurisdiction. But as the petitioner has both taken an appeal and sued out a writ of error, it is immaterial which is the proper form of bringing up the case.

The hearing below was upon a rule to show cause why a writ of prohibition should not issue as prayed for. The question at that hearing was the general question whether the court should issue a writ of prohibition. That question could not, at that stage of the case, be narrowed or divided by the pleadings filed by the defendants. The judgment, as recorded, although it contains a statement of the court's " opinion that it has no

jurisaiction of the matter complained of," is a general judgment dismissing the petition, with costs, which could not have been awarded upon a judgment of dismissal for want of jurisdiction. *Mayor* v. *Cooper*, 6 Wall. 247; *Elk* v. *Wilkins*, 112 U. S. 94, 98. The writ of error brings in question the judgment, not the opinion, of the court below. If the petition was rightly dismissed for any reason, whether because that court had no jurisdiction to issue a writ of prohibition to a court martial, or because the court martial had jurisdiction of the charges against the petitioner, the judgment must be affirmed.

It is argued in behalf of the petitioner that the Supreme Court of the District of Columbia is authorized to issue writs of prohibition, on the same grounds on which it was held, in *United States* v. *Schurz*, 102 U. S. 378, to be authorized to issue writs of mandamus, namely, because by the act of February 27, 1877, ch. 69, § 2, 19 Stat. 253, that court has cognizance of " all cases in law and equity between parties, both or either of which shall be resident or be found within said District ; " as well as because it has all the powers formerly exercised by the courts of Maryland, which, as declared by the Court of Appeals of that State in *Price* v. *State*, 8 Gill, 295, 310, included " all the powers exercised in England by the Court of King's Bench, so far as these powers are derived from rules and principles of the common law, and so far as the same are suited to the change in our political institutions, and are not modified by our constitutional or statutory enactments." On the other side, it is contended that neither the Supreme Court of the District of Columbia, nor any other court of the United States, is empowered to issue writs of prohibition to a court martial.

Whether the Supreme Court of the District of Columbia has power in any case to issue a writ of prohibition to a court martial is a question of great importance, not heretofore adjudged by this court; and we are not inclined, in the present case, either to assert or to deny the existence of the power, because upon settled principles, assuming the power to exist, no case is shown for the exercise of it. In deciding the case upon the facts before us, and expressing no opinion upon the broader question, because the determination of the case does not require

it, we take the same course that has been followed by eminent English judges in disposing of applications for writs of prohibition under similar circumstances. *Ex parte Smyth*, Tyrwh. & Gr. 222, 225; *S. C.*, 2 Cr., M. & R. 748, 753; 1 Gale, 274, 277; *In re Forster*, 4 B. & S. 187, 198.

The object of a writ of prohibition is to prevent a court of peculiar, limited or inferior jurisdiction from assuming jurisdiction of a matter beyond its legal cognizance. It can only be issued to restrain the exercise of judicial functions. When the suit complained of is brought by a private person, he may be joined as a defendant. But when it is a suit or prosecution on behalf of the government, the writ of prohibition can go to the court only. 3 Bl. Com. 112; *Ex parte Braudlacht*, 2 Hill (N. Y.) 367; *Thomson* v. *Tracy*, 60 N. Y. 31; *Connecticut River Railroad* v. *Franklin County Commissioners*, 127 Mass. 50, 59, 60.

The Secretary of the Navy being an executive officer, and not a member of the court martial sought to be prohibited, it is quite clear that his acts concerning the petitioner cannot be the subject of a writ of prohibition. The reasons against issuing a writ of prohibition to the court martial require fuller statement.

A writ of prohibition is never to be issued unless it clearly appears that the inferior court is about to exceed its jurisdiction. It cannot be made to serve the purpose of a writ of error or *certiorari*, to correct mistakes of that court in deciding any question of law or fact within its jurisdiction. These rules have been always adhered to by this court, in 'the exercise of the power expressly conferred upon it by Congress to issue writs of prohibition to the District Courts sitting as courts of admiralty; *United States* v. *Peters*, 3 Dall. 121; *Ex parte Easton*, 95 U. S. 68; *Ex parte Gordon*, 104 U. S. 515; *Ex parte Ferry Co.*, 104 U. S. 519; *Ex parte Pennsylvania*, 109 U. S. 174; as well as by the courts of England and of the several States, in the exercise of their inherent jurisdiction to issue writs of prohibition to courts martial. *Grant* v. *Gould*, 2 H. Bl. 69; *State* v. *Wakely*, 2 Nott & McCord, 410; *State* v. *Stevens*, 2 McCord, 32; *Washburn* v. *Phillips*, 2 Met. 296.

And this court, although the question of issuing a writ of prohibition to a court martial has not come before it for direct adjudication, has repeatedly recognized the general rule that the acts of a court martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts, by writ of prohibition or otherwise. *Dynes* v. *Hoover,* 20 How. 65, 82, 83 ; *Ex parte Reed,* 100 U. S. 13 ; *Ex parte Mason,* 105 U. S. 696 ; *Keyes* v. *United States,* 109 U. S. 336 ; *Wales* v. *Whitney,* 114 U. S. 564, 570 ; *Kurtz* v. *Moffit,* 115 U. S. 487, 500. See also *Wise* v. *Withers,* 3 Cranch, 331 ; *Meade* v. *Deputy Marshal of Virginia,* 1 Brock. 324 ; *In re Bogart,* 2 Sawyer, 396 ; *In re White,* 9 Sawyer, 49 ; *Barrett* v. *Hopkins,* 2 McCrary, 129.

In the leading case of *Grant* v. *Gould,* 2 H. Bl. 69, under an article of war subjecting to punishment at the discretion of a court martial any officer or soldier convicted of " having advised or persuaded any other officer or soldier to desert his Majesty's service," the petitioner for a writ of prohibition had been charged with " having advised and persuaded " two soldiers in the Coldstream Regiment of foot guards " to desert his Majesty's service, and to enlist into the service of the East India Company, knowing them at the same time to belong to the said regiment of foot guards." The sentence did not in terms find him guilty of having advised or persuaded them to desert the King's service ; but merely stated that the court martial was of opinion that he was " guilty of having promoted and having been instrumental towards the enlisting of " the two soldiers " into the service of the East India Company, knowing them at the said time to belong to the said regiment of foot guards ; and deeming this crime to be precisely of the same nature with that which is set forth in the charge, and to differ only in this, that it is rather inferior, but in a very slight degree, in point of aggravation," adjudged him to be punished. It was argued for the petitioner that he had not been found guilty of advising or persuading to desert, which was the substance of the offence charged, but, at the utmost, of promoting and aiding in the enlistment into the service of the East India Company, which of itself was no offence under the Articles of War or the Mutiny Act.

But Lord Loughborough, delivering the judgment of the Court of Common Pleas, discharging the rule for a writ of prohibition, said: "Taking the whole of the case together, it is clear that there is ground to suppose that they meant to convict him of the charge. But if, by the nicety which they used in penning the sentence, that sentence were to be invalidated, it could not be by a prohibition, whatever it might be by a review, or by an appeal. The most that can be made of it is an error in the proceedings; but we cannot prohibit upon that account. The sentence in the case of an unfortunate admiral* was certainly an inaccurate one. The question there was whether the court had not mistaken the law, yet a prohibition was not thought of. But it is unnecessary to discuss the sentence further; it would be extremely absurd to comment upon it as if it was a conviction before magistrates, which was to be discussed in a court where that conviction could be reviewed." 2 H. Bl. 107.

Of questions not depending upon the construction of the statutes, but upon unwritten military law or usage, within the jurisdiction of courts martial, military or naval officers, from their training and experience in the service, are more competent judges than the courts of common law. This is nowhere better stated than by Mr. Justice Perry in the Supreme Court of Bombay, saying: "And the principle of the non-interference of the courts of law with the procedure of courts martial is clear and obvious. The groundwork of the jurisdiction, and the extent of the powers of courts martial, are to be found in the Mutiny Act and the Articles of War, and upon all questions arising upon these her Majesty's judges are competent to decide; but the Mutiny Act and Articles of War do not alone constitute the military code, for they are, for the most part, silent upon all that relates to the procedure of the military tribunals to be erected under them. Now this procedure is founded upon the usages and customs of war, upon the regulations issued by the Sovereign, and upon old practice in the army, as to all which points common law judges have no opportunity, either from their law books or from the course of their ex-

---

* See Admiral Byng's Trial (official ed. fol. London, 1757) 3, 4, 125-130; 1 McArthur on Courts Martial (4th ed.) 103, 323; 2 Id. 274, 387-393.

perience, to inform themselves. It would therefore be most illogical, to say nothing of the impediments to military discipline which would thereby be interposed, to apply to the procedure of courts martial those rules which are applicable to another and different course of practice." *Porret's Case*, Perry's Oriental Cases, 414, 419. So in *Martin* v. *Mott*, 12 Wheat. 19, 35, Mr. Justice Story, delivering the opinion of this court, said that the law by which courts. martial were bound to execute their duties and to regulate their mode of proceeding, in the absence of positive enactments, was "the general usage of the military service, or what may not unfitly be called the customary military law." The same view, as regarding naval courts martial, was asserted and acted on by this court in *Dynes* v. *Hoover*, 20 How. 65, 82.

The martial provisions of the Revised Statutes, and of the Navy Regulations, affecting the nature of the office and duties of the petitioner, and the jurisdiction of the court martial over him, are as follows :

By § 415 of the Revised Statutes, "there shall be at the seat of Government an Executive Department, to be known as the Department of the Navy, and a Secretary of the Navy, who shall be the head thereof." By § 419, "the business of the Department of the Navy shall be distributed in such manner as the Secretary of the Navy shall judge to be expedient and proper among the following bureaus," one of which is "Seventh. A Bureau of Provisions and Clothing." And by § 420, "all of the duties of the bureaus shall be performed under the authority of the Secretary of the Navy, and their orders shall be considered as emanating from him, and shall have force and effect as such."

By § 421, "the chiefs of the several bureaus in the Department of the Navy shall be appointed by the President, by and with the advice and consent of the Senate, from the classes of officers mentioned in the next five sections respectively, or from officers having the relative rank of captain in the staff corps of the Navy, on the active list, and shall hold their offices for the term of four years." By § 425, "the Chief of the Bureau of Provisions and Clothing shall be appointed from the list of paymasters of the Navy; of not less then ten years standing."

By §§ 1471, 1472, he " shall have the relative rank of commo·
dore while holding said position," and the title of Paymaster
General; and by § 1473, upon being retired from that position
by reason of age or length of service, he shall have the relative
rank of commodore.

By § 178, in case of the death, resignation, absence or sick-
ness of the chief of any bureau, his duties are to be performed
by his deputy, or if there be none, by the chief clerk of such
bureau, unless the President shall direct them to be performed
by some other officer in either department.

Chapter 10 of Title 15 of the Revised Statutes, entitled
"Articles for the Government of the Navy," contains the
following:

"SEC. 1624. The Navy of the United States shall be
governed by the following articles:"

"ART. 8. Such punishment as a court martial may adjudge
may be inflicted on any person in the Navy—

"First. Who is guilty of profane swearing, falsehood, drunk-
enness, gambling, fraud, theft, or any other scandalous conduct
tending to the destruction of good morals;"

"Ninth. Or is negligent or careless in obeying orders, or
culpably inefficient in the performance of duty."

"ART. 22. All offences committed by persons belonging to
the Navy, which are not specified in the foregoing articles,
shall be punished as a court martial may direct.

"ART. 23. All offences committed by persons belonging to
the Navy while on shore shall be punished in the same manner
as if they had been committed at sea."

The Orders, Regulations and Instructions for the Adminis-
tration of Law and Justice in the United States Navy, issued
by the Secretary of the Navy under authority of the President
in 1870, provide, in § 126, that when a charge " comes directly
under any enactment, it should be set forth in the terms used
therein;" and in § 127, that "when the offence is a disorder
or neglect not specially provided for, it should be charged
as 'scandalous conduct tending to the destruction of good
morals.'"

By § 1547 of the Revised Statutes, passed since the adoption

of the Navy Regulations of 1870, "the orders, regulations and instructions issued by the Secretary of the Navy prior to July 14, 1862, with such alterations as he may since have adopted, with the approval of the President, shall be recognized as the Regulations of the Navy, subject to alterations adopted in the same manner." This legislative recognition of the Navy Regulations of 1870 "must," as was said by Chief Justice Marshall of a similar recognition of the Army Regulations in the act of April 24, 1816, ch. 69, § 9, 3 Stat. 298, "be understood as giving to these regulations the sanction of the law." *United States* v. *Maurice*, 2 Brock. 96, 105 ; *Ex parte Reed*, 100 U. S. 13.

It is argued for the petitioner that his office of Paymaster General and Chief of a Bureau in the Department of the Navy, under a distinct appointment by the President and confirmation by the Senate, is a separate office of a purely civil character; that the duties of that office are not military, but civil only, relating to the business of the Navy Department, performed under the authority of the Secretary of the Navy, who is exclusively a civil officer, and, in case of a vacancy in the office of chief of bureau, or of his absence, to be performed by a deputy or chief clerk, who is also exclusively a civil officer; and therefore that a violation of those duties can be prosecuted in the civil courts only, and not by court martial.

On the other hand, it is argued that the petitioner is an officer of the navy; that no one but an officer of the navy of a certain rank can be appointed to the office of chief of bureau and paymaster general; that the petitioner's appointment to that office gives him the relative rank of commodore in the navy; that the duties of paymaster general are naval duties performed by a naval officer; and therefore that any violation of those duties is triable and punishable by naval court martial.

The charges on which the court martial was ordered to try the petitioner are drawn up in two aspects. The leading charge is for "scandalous conduct tending to the destruction of good morals," and various acts done by the petitioner as paymaster general are set forth in fourteen specifications under that charge. The other charge is for "culpable inefficiency in the performance of duty," with four specifications, some of which,

at least, allege, though in different forms, acts set forth in the specifications under the first charge.

If the court martial has jurisdiction of the principal charge and of some or all of the specifications under it, the addition of the second charge with its specifications affords no ground for issuing a writ of prohibition. The evidence taken before the court martial is not produced or relied on by the petitioner. The question presented by the record before us is whether the court martial should be prohibited from trying him on the charges and specifications laid before it; and the case comes within the rule stated by Chief Justice Shaw in *Washburn* v. *Phillips*, already cited, "Unless it appears upon the face of the proceedings that the court has no jurisdiction of any part of the subject matter of these charges, it is not a case for a prohibition." 2 Met. 299. There may indeed be cases in which two matters before the inferior court are so distinct, that a writ of prohibition may go as to the one and not as to the other. But when the leading charge is within its jurisdiction, and the other charge, though varying in form, is for the same or similar acts, like a second count in an indictment, and the same sentence may be awarded on the first charge as upon both, a writ of prohibition should not issue. *Enraght* v. *Penzance*, 7 App. Cas. 240.

The essential point to be determined, therefore, is whether the court martial has jurisdiction of the first charge; and whether it would have jurisdiction of the second, if that were the only one, is immaterial.

In *Dynes* v. *Hoover*, above cited, this court held that the jurisdiction of courts martial, under the articles for the government of the navy established by Congress, was not limited to the crimes defined or specified in those articles, but extended to any offence which, by a fair deduction from the definition, Congress meant to subject to punishment, being "one of a minor degree, of kindred character, which has already been recognized to be such by the practice of courts martial in the army and navy services of nations, and by those functionaries in different nations to whom has been confided a revising power over the sentences of courts martial;" or which, though

not included, in terms or by construction, within the definition, came within "a comprehensive enactment, such as the 32d article of the rules for the government of the navy, which means that courts martial have jurisdiction of such crimes as are not specified, but which have been recognized to be crimes and offences by the usages in the navy of all nations, and that they shall be punished according to the laws and customs of the sea." 20 How. 82.

The 32d of the Articles for the Government of the Navy, established by the act of April 23, 1800, ch. 33, 2 Stat. 49, in force at the time of that decision, has been retained in the existing Article 22, before cited, substituting only, at the beginning, the word "offences" for "crimes" and, in describing the mode of punishment, the words "as a court martial may direct," instead of "according to the laws and customs in such cases at sea." As the article in its new form still applies only to offences "not specified in the foregoing articles," the alteration was evidently intended to change only the rule of punishment, leaving within the jurisdiction of courts martial cases not so specified, but recognized as military offences by the usages of the naval service.

It does not, therefore, appear to us important to inquire whether, by the rules that govern military courts, the first charge should be considered as made under the concluding words of the first clause of Article 8, punishing "profane swearing, falsehood, drunkenness, gambling, theft, or any other scandalous conduct tending to the destruction of good morals;" or under Article 22, punishing "all offences committed by persons belonging to the navy, which are not specified in the foregoing articles;" for in either view, as we have already seen, it should, under the Regulations of 1870, recognized and sanctioned by Congress, be charged as "scandalous conduct tending to the destruction of good morals."

Under every system of military law for the government of either land or naval forces, the jurisdiction of courts martial extends to the trial and punishment of acts of military or naval officers which tend to bring disgrace and reproach upon the service of which they are members, whether those acts are done

in the performance of military duties, or in a civil position, or in a social relation, or in private business.

Two cases, often cited in books on military law, show that acts having no relation to the public service, military or civil, except so far as they tend to bring disgrace and reproach upon the former—such as making an unfounded claim for the price of a horse, or attempting to seduce a brother officer's wife during his illness—may properly be prosecuted before a court martial under an article of war punishing " scandalous and infamous conduct unbecoming an officer and a gentleman ; " for the sole ground on which the sentence was disapproved by the King in the one case, and by the Governor General of India in the other, was that the court martial, while finding the facts proved, expressly negatived scandalous and infamous conduct, and thereby in effect acquitted the defendant of the charge. 2 McArthur on Courts Martial (4th ed.) 298 ; Hough's Precedents in Military Law, 238; Samuel on Military Law, 650–652 ; Simmons on Courts Martial (4th ed.) 418–420 ; De Hart on Courts Martial, 375–377.

In a third case, a lieutenant in the army was tried in England by a general court martial for conduct on board ship while coming home from India as a private passenger on leave of absence from his regiment for two years. The charge was that, being a passenger on board the ship Cæsar on her voyage from Calcutta to England, he was accused of stealing property of one Ross, his servant; and that the officers and passengers of the ship, after inquiring into the accusation, expelled him from their table and society during the rest of the voyage ; yet that he, " under circumstances so degrading and disgraceful to him, neither then, nor at any time afterwards, took any measures as became an officer and a gentleman to vindicate his honor and reputation ; all such conduct as aforesaid being to the prejudice of good order and military discipline." Before and at the trial, he objected that the charge against him did not, expressly or constructively, impute any military offence, or infraction of any of the Articles of War, or any positive act of misconduct or neglect, to the prejudice of good order and military discipline ; or state any fact which, if true, subjected him

to be arraigned and tried as a military officer.    But the court martial proceeded with the trial, found him "guilty of the whole of the charge produced against him, in breach of the Articles of War," and sentenced him to be dismissed the service, and added, "that it has considered the charge produced against the prisoner entirely in a military point of view, as affecting the good order and discipline of the army; and that it does not mean by its sentence to offer any opinion as to the original charge of theft, of which the prisoner was accused by the man Ross."    The sentence was approved by the King, and carried into execution, and for that reason the Court of King's Bench denied a writ of prohibition.    Lord Denman, in delivering judgment, said that the court did not think it necessary to consider whether the charge was so framed as to bring the party within the Articles of War; but that it agreed with Lord Loughborough's remark in *Grant* v. *Gould*, above cited, that it would be extremely absurd to expect the same precision in a charge brought before a court martial as was required to support a conviction by a justice of the peace.    *In re Poe*, 5 B. & Ad. 681, 688; *S. C.*, 2 Nev. & Man. 636, 644.

Under the 61st of the Articles of War for the Government of the Army of the United States, which, omitting the words "scandalous or infamous," provides that "any officer who is convicted of conduct unbecoming an officer and a gentleman shall be dismissed from the service," it is observed in the most recent treatise on military law, and supported by copious references to precedents, "While the act charged will more usually have been committed in a military capacity, or have grown out of some military status or relation, it is by no means essential that this should have been its history.    It may equally well have originated in some private transaction of the party, (as a member of civil society, or as a man of business,) which, while impeaching his personal honor, has involved such notoriety or publicity, or led to such just complaint to superior military authority, as to have seriously compromised his character and position as an officer of the army and brought scandal or reproach upon the service."    1 Winthrop on Military Law, 1023

& *seq.* See also 6 Opinions of Attorneys General, 413, 417; *Runkle* v. *United States*, 19 C. Cl. 396, 414.

This being the first case of an application to a court of the United States for a writ of prohibition to a court martial, we have cited the authorities bearing upon the subject more fully than might have been thought fit under other circumstances.

It is hardly necessary to add that by the Navy Regulations of 1870, §§ 260–265, the court martial could only be dissolved by the Secretary of the Navy, and might, at any time before he had dissolved it, be lawfully reconvened by him to reconsider its proceedings. *Ex parte Reed*, 100 U. S. 13.

To order a writ of prohibition to issue in the present case would be to declare that an officer of the navy, who, while serving by appointment of the President as chief of a bureau in the Navy Department, makes contracts or payments, in violation of law, in disregard of the interests of the government, and to promote the interests of contractors, cannot lawfully be tried by a court martial composed of naval officers, and by them convicted of scandalous conduct, tending to the destruction of good morals, and to the dishonor of the naval service.

This we are not prepared to do, being clearly of opinion that such conduct of a naval officer is a case arising in the naval forces, and therefore punishable by court martial under the articles and regulations made or approved by Congress in the exercise of the powers conferred upon it by the Constitution, to provide and maintain a navy, and to make rules for the government and regulation of the land and naval forces, without indictment or trial by jury.

*Judgment affirmed.*