People *ex rel.* Gesser *v.* French *et al.*, Police Commissioners.

(*Supreme Court, General Term, First Department.* January 28, 1889.)

1. Municipal Corporations—Discharge of Policeman—Evidence.

On *certiorari* to review the decision of the police commissioners of New York city in dismissing relator from the police force, it appeared that relator, while not on duty, entered a house about 1 P. M., attempted to go up stairs, and drew a revolver, which was taken from him, and he was ejected. The proprietor of the house testified that relator was grossly intoxicated, and relator admitted that he did not know what house he was in, on account of the drinks he had taken, and offered as an excuse that he had drank because he was very chilly, having been on duty the night before, when the weather was inclement. About four hours after entering the house, he could not remember what had become of his revolver, though the inspector testified that he was then apparently sober. *Held* that he was properly dismissed.

2. Same—Jurisdiction of Police Commissioners.

The board of police commisioners had jurisdiction of the charge against relator, though he was not on duty at the time of the alleged misconduct.

Writ of *certiorari* to review the decision of Stephen B. French and others, police commissioners of New York city, dismissing John Gesser from the police force.

Argued before VAN BRUNT, P. J., and DANIELS and BARTLETT, JJ.

*John M. Tierney,* for relator. *Henry R. Beekman,* Corp. Counsel, (*William L. Turner,* of counsel,) for respondents.

BARTLETT, J. The relator, who was a patrolman in the police force, was charged with conduct unbecoming an officer, in being grossly intoxicated at about 1 o'clock in the afternoon of the 12th day of March, 1888, and in having, while in that condition, entered the house of Lauretz Jorgenson, at 92 Third avenue, in the city of New York, where he attempted to go up stairs, and, furthermore, drew his revolver, which was taken from him by said Jorgenson. The complainant Jorgenson was a manufacturer of cigars, whose house, 92 Third avenue, was partly a cigar store and partly a dwelling. He testified that on March 12, 1888, he was told by his daughter that a man was coming into the house; that thereupon he went out into the hall, and found the relator, of whom he inquired where he wanted to go; that the relator, who was grossly intoxicated, said he wanted to see Lizzie; that the witness told him there was no such person in the house, and that he could go out. The complainant continued: "My wife told me to go back in the room, and she would try and get the man out. She could not get him to go, and I came back, and saw that he had his revolver in his hand. I took it and handed it to another man. I took him out, and I locked the door." At the time of this occurrence it cannot have been far from 1 o'clock. The relator was not on duty, and was clad in civilian costume, with the exception of his trousers, which belonged to his uniform. He came into the Fourteenth Precinct station-house at about half past 5 o'clock the same afternoon. Meantime Inspector Williams had obtained the revolver which the relator left at 92 Third avenue, and upon the arrival of the officer at the police station, the inspector asked him if he had his pistol about him. He answered, "No;" that it was up-stairs in his closet, but, upon being sent for it, was unable to find it there. He then admitted that he did not know where his revolver was, and did not know who had it; but he identified the weapon as his own when the inspector showed it to him. The relator himself denied that he had taken more than four drinks on the day of his visit to the complainant's house. He had been on duty the night before until 6 o'clock in the morning. He appears to have remained at home until noon, when he had dinner, and went out up Fourth avenue. He says he did not feel well, and on the way up had several drinks. According to his account, when he came to Jorgenson's place, he inquired for a friend whom he thought probably lived in that house, but he made a mistake. He said that he pulled out his handkerchief, and his handkerchief caught on his revolver, and pulled that out, also. He admitted that it was on account of the drinks he had taken that he did not know what house he was in. The principal excuse offered for this conduct on the part of the officer is the fact that March 12, 1888, was the day of the great storm commonly known as the "blizzard," and that the weather was so severe that it was necessary for the preservation of the health and life of the relator to drink the liquor which he did. This excuse, however, has its foundation in the ingenious imagination of counsel, rather than in the facts of the case. The officer says little or nothing about the storm which was prevailing at the time he became intoxicated, but refers, rather, to the inclement weather of the night before, when he was on duty, as his reason for drinking on the following day. It is true, he declares that he felt very chilly, in consequence of which he drank, but it cannot be inferred from this statement that his life, or even his health, was in any such peril as to justify, excuse, or palliate his conduct in getting into such a condition as he was when discovered upon the premises of the complainant. The

only important testimony tending to controvert the charge that he was then very much intoxicated was the evidence of Inspector Williams, that when he saw him at half past 5 at the station-house, the relator was apparently sober, and that no odor of liquor could then be detected about his person. But we cannot interfere with the finding of the police commissioners upon conflicting proofs, so long as there is sufficient evidence to sustain the conclusion which they reached; and here the evidence of the relator's intoxication is ample. The board of police had jurisdiction to entertain the charge against the relator, notwithstanding that the alleged misconduct was committed at a time when the officer was not on duty. This is settled by authority, so far as relates to the police force of New York and Brooklyn. *People* v. *Commissioners*, 11 Hun, 403; *People* v. *Carroll*, 42 Hun, 438. The power of the police commissioners in such cases is analogous to the jurisdiction of courts martial, which embraces acts on the part of military or naval officers tending to bring disgrace and reproach upon the services of which they are members, even if those acts are done in civil positions, social relations, or private business. *Smith* v. *Whitney*, 116 U. S. 167, 183, 6 Sup. Ct. Rep. 570. No argument is required to show that a police officer, who gets so drunk as to enter the house of a stranger without knowing where he is, who loses his revolver there, and who is unable to remember four hours afterwards what has become of the weapon, is to be deemed guilty of an act tending to bring reproach upon the police force, and to impair the respect which it ought to command from the community. The proceedings should be affirmed, with costs.

VAN BRUNT, P. J., concurs.

DANIELS, J., (*concurring*.) I agree to affirmance on what Justice BARTLETT very appropriately says, and also on the recent decision of *People* v. *Police Commissioners*, 18 N. E. Rep. 133, which appears to be controlling, holding that the sufficiency of the excuse is for the commissioners, and not for the court.