KIRKMAN v. McCLAUGHRY.

(Circuit Court, D. Kansas, First Division. March 13, 1907.)

No. 8,505.

1. CRIMINAL LAW—SENTENCE—DIFFERENT OFFENSES—CONSECUTIVE OPERATION.
Where sentence is passed against an offender in the civil courts, prescribing different terms of imprisonment on the same day, the terms will be construed to run concurrently, unless the sentence expressly indicates an intention that they shall be served consecutively.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, § 3315.]

2. ARMY AND ·NAVY—WAR DEPARTMENT—RULINGS—EFFECT.

While the rulings of the War Department and its practice, as enunciated in adjudicated cases emanating therefrom, is not binding on the federal courts, such rulings will not be overthrown, except for the most cogent reasons.

3. SAME—ARMY REGULATIONS—CONSTRUCTION.

Army Regulations, par. 981, providing that, when "soldiers" either undergoing or awaiting sentence commit offenses for which they are tried and sentenced, the second sentence shall be executed on the expiration of the first, applies to officers as well as private soldiers.

4. SAME—SENTENCE—DIFFERENT OFFENSES—SERVICE.

· Petitioner was tried for a military offense, and sentenced May 23, 1905, to dismissal and confinement in the penitentiary for two years. During the pendency of the proceedings, he was placed on trial for a second offense, and on April 6, 1905, was sentenced to be dismissed from the service and to be confined for a period of one year. Both proceedings were reviewed, and the sentence confirmed by the President on July 15, 1905, and the place of confinement designated by executive order. *Held*, that the sentences operated consecutively, and not concurrently, under Army Regulations, par. 981, providing that, when soldiers either undergoing or awaiting sentence commit offenses for which they are tried and sentenced, the second sentence shall be executed on the expiration of the first. ·

## Habeas Corpus. ·

This is a petition for a writ of habeas corpus filed by George W. Kirkman, late captain Twenty-Fifth United States Infantry, against R. W. McClaughry, the warden of the United States penitentiary at Ft. Leavenworth, in which penal institution petitioner is confined by authority of sentences imposed by general courts-martial duly and regularly entered against him and properly approved in compliance with the articles of war. The facts necessary to an understanding and decision of the precise question presented by the petition for the writ and the return of the warden to the writ are these:

. In pursuance of special order No. 9, dated Headquarters Department of Missouri, January 9, 1905, petitioner was regularly tried by a general court-martial, duly constituted and convened at Ft. Niobrara, Neb., on specifications and charges of violation of the provisions of the sixty-first and sixty-second articles of war. The trial resulted in a conviction of petitioner, and sentence was imposed May 23, 1905, as follows:

"And the court does therefore sentence him, Capt. George W. Kirkman, Twenty-Fifth United States Infantry, to be dismissed from the service of the United States and to be confined at hard labor in such penitentiary as the reviewing authority may direct, for the period of two (2) years."

The record of the proceedings of the court having been transmitted and submitted to the President for his approval before execution, in pursuance of the 106th article of war, the sentence pronounced was duly approved by the President, and the place of confinement under the sentence designated, in the following language:

· "The White House, June 15, 1905.

"The sentence in the foregoing case of Captain Geo. W. Kirkman, 25th Regiment of Infantry, is approved and will be carried into execution.

"Theodore Roosevelt.

"The United States penitentiary at Fort Leavenworth, Kansas, is designated as the place for his confinement."

During the pendency of this proceeding against the petitioner, and its postponement awaiting the taking and arrival of proofs from the Philippines, petitioner committed other and further offenses, and was again, in pursuance of special order No. 47, dated Headquarters Department of the Missouri, March 13, 1905, regularly placed upon his second trial, and tried before a general court-martial, duly constituted and convened at Ft. Niobrara, Neb., on specifications and charges of violation of the provisions of the sixty-first and sixty-second articles of war, and was, on the 6th day of April, 1905, convicted and sentenced as follows:

"And the court does therefore sentence him, Capt. Geo. W. Kirkman, Twenty-Fifth Infantry, to be dismissed from the service of the United States and to be confined at hard labor at such place as the reviewing authority may direct for the period of one (1) year."

The record of this second proceeding against petitioner having been transmitted and submitted to the President, in pursuance of the articles of war, the same was duly approved by him and the place of confinement designated, in the following language:

"The White House, June 15, 1905.

"The sentence in the foregoing case of Captain Geo. W. Kirkman, 25th Regiment of Infantry, is approved and will be carried into execution.

"Theodore Roosevelt.

"Captain Kirkman ceases to be an officer of the army from June 17, 1905. The United States penitentiary at Fort Leavenworth, Kansas, is designated as the place for his confinement."

As shown by the record, these trials were had before separate courts-martial for distinct offenses included therein in each case, being such civil statutory offenses as justified the imposition of the sentence pronounced against petitioner, under the ninety-seventh article of war.

Under this state of facts, as shown by the petition for the writ, and the return made to the writ by the warden of the penitentiary, petitioner demands his release from custody, in the following language, as copied from his petition:

"Your petitioner further shows to your honorable court that a sentence of a court-martial becomes valid only when sanctioned by the reviewing authority; that the sentences of both the above-mentioned courts-martial were approved on the same day by the reviewing authority, namely, June 15, 1905; that both sentences began to run on said day; that on January 22, 1907, allowing for good behavior, a time equal to the longest sentence had been served; that both sentences ran concurrently, and therefore on said 22d day of January, 1907, both sentences had been served and suffered."

Wherefore petitioner prayed the issuance of the writ and his discharge thereunder.

Floyd E. Harper, for petitioner.

H. J. Bone, U. S. Atty., J. R. Wish, Asst. U. S. Atty., and Wm. G. Doane, Judge Advocate, for respondent.

POLLOCK, District Judge (after stating the facts). As the petition for the writ was filed in this court on February 8th of the present year, and the writ issued on the 4th day of this present month, and as the term of sentence as claimed by the petitioner began to run on the 15th of June, 1905, it is quite clear the sentence of two years, imposed under the proceedings first instituted against him, had expired neither at the date of the filing of the petition, nor at the date the writ was issued, nor even on this 7th day of March, 1907, when the case was submitted for decision upon the petition and the return to the writ, unless allowance of time for good behavior, as claimed by the petitioner, be made. But as the case has been submitted for decision on the return to the writ, the truth of which is admitted, on the theory that such return does not constitute a legal justification for the detention of the petitioner, admitted by the warden, and as no proofs have been offered in support of the claim made for good behavior in the petition, and as the return does not admit allowance to the petitioner of time for good behavior, it may well be doubted whether in the present state of the record the petitioner has shown himself entitled to his discharge, even though his contention that the sentences imposed run concurrently should be sustained. However, assuming for the purpose of this de-

cision petitioner is entitled to an allowance of time for good behavior, as claimed by him, is he then entitled to his discharge, under the facts above stated?

Beyond doubt, it is the settled rule in the civil courts of this nation (as the term "civil" is used in contradistinction of "military" courts), when engaged in the exercise of their criminal jurisdiction, and also the settled rule in most, if not all, of the states of this Union, by virtue of common-law principles, or in the exercise of express legislative authority, when imposing sentence upon an offender convicted on two or more counts in a criminal pleading charging separate and distinct offenses, or in imposing sentence after conviction against an offender in two or more cases in which distinct crimes are charged, that the terms of imprisonment imposed may run consecutively or cumulatively, instead of concurrently; that is, the second term to begin at the expiration of the first, etc. 1 Chitty on Criminal Law, 718; 12 Cyc. p. 962; Blitz v. United States, 153 U. S. 308, 14 Sup. Ct. 924, 38 L. Ed. 725; Howard v. United States, 75 Fed. 986, 21 C. C. A. 586, 34 L. R. A. 509; In re Esmond (D. C.) 42 Fed. 827; Kite v. Commonwealth, 11 Metc. (Mass.) 581; Mims v. State, 26 Minn. 498, 5 N. W. 374; State v. Carlyle, 33 Kan. 716, 7 Pac. 623. However, conceding the power of the court in such case to impose sentence against an offender prescribing different terms of imprisonment to run consecutively, as a settled rule the sentence pronounced must clearly and definitely express the purpose and intent that the terms are to be served consecutively, or it will be held the terms run concurrently, and not cumulatively. U. S. v. Patterson (C. C.) 29 Fed. 775; Ex parte Gafford, 25 Nev. 101, 57 Pac. 484, 83 Am. St. Rep. 568; Ex parte Hunt, 28 Tex. App. 361, 13 S. W. 145; Wallace v. State, 41 Fla. 547, 26 South. 713; Larney v. Cleveland, 34 Ohio St. 599; In re Strickler, 51 Kan. 700, 33 Pac. 620.

In harmony with these principles, had the sentence of imprisonment imposed by the general courts-martial against petitioner been imposed by a civil court of the country for the infraction of a criminal statute of the land, they would of necessity have run concurrently, and not consecutively, and petitioner would in such case be entitled to his discharge as demanded by him, for the language employed evidences no intent to impose accumulative terms of imprisonment, and, although rendered by separate courts and on different days, yet from the nature of the punishment imposed they could not become operative or be executed until approved by the President and the place of imprisonment had been by him designated, in accordance with the 106th article of war. The question here raised for decision, however, is not the rule applied to sentences imposed by civil courts of this country, but the applicability or inapplicability of that rule to sentences imposed by the military courts of the country.

Are the rules of law applied to the judgments of such courts by reason of the law of their creation, the practice, and proceedings therein obtaining, or in the very nature of things, such as to preclude the giving of the same effect to their sentences imposed as would be given to judgments of conviction imposed by civil tribunals in the exercise of their criminal jurisdiction?

The constitutional power, authority, and jurisdiction of courts-martial is found in article 1, § 8, of the Constitution, which confers the power on Congress to "raise and support armies," to make rules for the government and regulation of land and naval forces, "to make all laws that shall be necessary and proper for carrying into execution the foregoing powers and all other powers vested by this Constitution in the government of the United States, or in any department or officer thereof." By Rev. St. § 1342 [U. S. Comp. St. 1901, p. 944], Congress enacted what is known as the "Articles of War" now in force for the government of the armies, and has, from time to time since the passage of the act, amended these articles of war and changed the procedure before courts-martial. The law administered by courts-martial consists of these articles of war and the regulations and instructions sanctioned by the President, as commander in chief of the army, for the government of the army under the Constitution. Cyc. vol. 3, p. 844; United States v. Freeman, 3 How. 556, 11 L. Ed. 724; Gratiot v. United States, 4 How. 80, 11 L. Ed. 884; Ex parte Reed, 100 U. S. 13, 25 L. Ed. 538. Courts-martial possess the same full, complete, and plenary jurisdiction over offenses committed against military law as have civil courts of the country over controversies within their cognizance, and while acting within the sphere of such exclusive jurisdiction they are supreme. Carter v. Roberts, 177 U. S. 496, 20 Sup. Ct. 713, 44 L. Ed. 861; In re Grimley, Petitioner, 137 U. S. 147, 11 Sup. Ct. 54, 34 L. Ed. 636; Smith v. Whitney, 116 U. S. 167, 6 Sup. Ct. 570, 29 L. Ed. 601; Kurtz v. Moffitt, 115 U. S. 487, 6 Sup. Ct. 148, 29 L. Ed. 458.

As no controversy is raised in this case as to the jurisdiction of the court over the person and offense charged, and as the power and jurisdiction to impose the separate punishments assessed against petitioner is unquestioned, and the law therein administered being ascertained, we come now to the question involved in this case, namely, the power to hold petitioner in imprisonment until the termination of both terms, notwithstanding the sentences imposed went into execution on the same day, are not in terms made to relate to each other, and are not in express words made to run consecutively. In considering this question, it may be observed, by the very contract of enlistment, a soldier in the service of his country waives many of his civil rights, and engages to be bound to implicit obedience of the orders of his superiors and to the rules and regulations of the service; to waive many of his constitutional rights obtaining in civil courts of justice when arraigned as a defendant for trial before a court-martial. As said by Mr. Justice Brown, when on the district bench, in United States v. Clark (C. C.) 31 Fed. 710:

"It would be extremely unwise for the civil courts to lay down general principles of law which would tend to impair that of the military arm, or which would seem to justify or commend conduct prejudicial to good order and military discipline. An army is a necessity—perhaps I ought to say an unfortunate necessity—under every system of government, and no civilized state in modern times has been able to dispense with one. To insure efficiency, an army must be, to a certain extent, a despotism. Each officer, from the general to the corporal, is invested with an arbitrary power over those beneath him, and the soldier who enlists in the army waives, in some particulars, his rights as a civilian, surrenders his personal liberty during the terms of his en-

listment, and consents to come and go at the will of his superior officers. He agrees to become amenable to the military courts, to be disciplined for offenses unknown to the civil law; to relinquish his right of trial by jury, and to receive punishments which, to the civilian, seem out of all proportion to the magnitude of the offense."

In so far as I have been able to determine, the question here presented is not ruled by any adjudicated case, and its solution in reason must depend upon the law administered by courts-martial and the rules and precedents which govern and control in that department of the government. While it may be true the construction placed upon the articles of war and the rules and regulations for the government of the army promulgated by the executive through the Secretary of War by the commanding officer of a military department, though approved by the Secretary of War, are not binding upon the judicial department, yet they are entitled to great weight. It is not for the judicial department of the government to in any wise control or direct proceedings in the military courts of the country by such forms of procedure or methods of practice as they might approve. The same effect must be given to the judgments and sentences of courts-martial imposed by them against offenders in the exercise of their exclusive military jurisdiction under the Constitution, as would be given by such courts if the question arose in a matter over which such courts had cognizance, unless it may be said upon the record presented such judgment is void for want of jurisdiction, or because it was rendered under a law clearly unconstitutional, or for some other cause.

Coming, then, to a consideration of the precise question here involved, the legal effect of the sentences imposed upon petitioner as a justification to the warden for his admitted detention of petitioner, it is clear to my mind such legal intent must be founded in the law administered by courts-martial imposing the sentence against petitioner, as construed by those officers of the War Department of the government learned in military law and its practice as enunciated in the adjudicated cases emanating from that department, for, as has been said, while such rulings may not be binding upon this court, yet they are entitled to great weight and consideration, and should not be overthrown, except for the most cogent reasons and upon undoubted grounds. As said by the Supreme Court in United States v. Healey, 160 U. S. 136, 16 Sup. Ct. 247, 40 L. Ed. 369:

"When the practice in a department in interpreting a statute is uniform, and the meaning of the statute, upon examination, is found to be doubtful or obscure, this court will accept the interpretation by the department as the true one."

As said by that court in Railroad v. Whitney, 132 U. S. 366, 10 Sup. Ct. 115 (33 L. Ed. 363):

"It is true that the decisions of the Land Department on matters of law are not binding upon this court, in any sense. But on questions similar to the one involved in this case they are entitled to great respect at the hands of any court."

And, again, as said by that court in United States v. Moore, 95 U. S. 760, 24 L. Ed. 588:

"The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons. * * * The officers concerned are usually able men, and masters of the subject. Not unfrequently they are the draftsmen of the laws they are afterward called upon to interpret."

What, therefore, are the regulations sanctioned and promulgated by the President for the government of the army which are administered as the law by courts-martial, and what are the rulings applicable to the sentences pronounced by such courts against offenders, as construed by men learned in military law charged with its enforcement, as applied to this particular case? The language of the return made by the warden, in response to the writ issued in this case, reads:

"That during arrest pending trial on charges above mentioned he, said Kirkman, upon further offenses charged as committed by him during said arrest was again duly arraigned before a general court-martial convened by special orders No. 47.".

Paragraph 981 of the army regulations provide:

"When soldiers either undergoing or awaiting sentence commit offenses for which they are tried and sentenced the second sentence shall be executed upon the expiration of the first."

This regulation, as has been seen, is embodied in and forms a part of the law administered by courts-martial. Under the language of the return which is admitted by petitioner to be true, this regulation is directly applicable to and decisive of the question involved, had petitioner been a private soldier instead of an officer of the rank of captain; the insistence of petitioner being this regulation does not control here for that reason. Whatever may be the distinction in the service as the term "soldier" and "officer" are used in common parlance, I am inclined to the opinion the word "soldier," as employed in this regulation, is used in its general signification, and is applicable to petitioner. The regulation above quoted would seem from the authorities on the subject to be the outgrowth of a general rule of procedure obtaining in military law long prior to its announcement; that is to say, the regulation seems to have sprung from the law, and not the law from the regulation.

Winthrop, in his work on Military Law and Precedents (volume 1, p. 651), says:

"As has already been indicated in this chapter, a sentence of imprisonment duly adjudged a military person, who is at the time undergoing a sentence of the same character (or who has received such a sentence which, however, has not yet been approved or commenced to be enforced, but is duly approved presently), is cumulative upon the entire sentence and to be executed accordingly, i. e., its execution is to follow immediately, and to proceed in due course till itself completed. This principle is now incorporated in paragraph 1029, A. R. where it is declared, in general terms, when soldiers, either undergoing or awaiting sentences, commit offenses for which they are tried and sentenced, the second sentence will be executed upon the expiration of the first."

Mr. Davis, in his work on Military Law (page 161), says:

"Where, while an officer or soldier is undergoing a certain sentence, he is again brought to trial for a military offense, and a further sentence is adjudged him, imposing a punishment of the same species as that which is being executed, it is the general rule of the service that the second sentence is to be

regarded as cumulative upon the first, and that its execution is to commence when execution of the first is completed. This, whether or not the court in the second sentence may have in terms specified that the second punishment should be additional to the first; such second punishment being made cumulative by operation of law irrespective of any direction in the sentence."

In the year 1873, shortly after the adoption of the present articles of war by Congress, Judge Advocate General Holt submitted for the consideration of the Secretary of War the following opinion as to the method of procedure in the execution of separate sentences of imprisonment imposed by courts-martial, and the same was approved by the Secretary:

"This man, on his plea of guilty, was convicted of theft, and sentenced with dishonorable discharge, and loss of all pay and allowances, to be confined at hard labor for six months—which expired on the 29th of May last. While held in confinement on this charge, but before his trial, to wit, on the 7th day of October, 1872, he deserted, and for this offense was subsequently tried and sentenced with dishonorable discharge and loss of all pay and allowances, to be confined in some military prison for the period of three years. The orders promulgating the proceedings of the court in both cases bear the same date, November 29, 1873. Under these circumstances, the prisoner inquired whether he can be legally held under the second sentence after having been dishonorably discharged under the first. As the law takes no notice of the fractions of a day, both these sentences must be held to have gone into operation at the same moment, and the dishonorable discharge under them leave the prisoner, in character of convict, to serve out the longer sentence, after his confinement under the first has terminated. The continuance of his confinement under the second sentence is therefore regarded as strictly legal." Record Book No. 34, pp. 479–480.

In 1895 Judge Advocate General Leiber rendered the following opinion on the same subject:

"The warden of the Minnesota state prison asks, with reference to the case of a prisoner 'receiving sentences, one for four years, the other for one year, on the same day,' and the term of service of each sentence commences, 'Are they concurrent?' The inquiry relates to the sentences of Charles Douglass, promulgated in special orders No. 120, 1894. Department of Dakota. This man was tried August 15, 1894, and sentenced to four years' confinement, and while awaiting sentence was on August 20th tried for another offense and sentenced to one year's confinement. Paragraph 1029 of the Army Regulations is as follows: 'When soldiers, either undergoing or awaiting sentence, commit offenses for which they are tried and sentenced, the second sentence will be executed upon the expiration of the first.' Now paragraph 981 Army Regulations. Under this regulation, as well as the established practice of the service, the sentence of confinement for one year in this case takes effect upon the expiration of the four years' term. The sentences are cumulative and not concurrent." Record Card, 1609.

The above rulings formulate and contain what has been the settled practice of the War Department of our government on the subject now under investigation for more than one-third of a century, and these rulings are known and understood of all men learned in military affairs. Such being the settled and well-known practice of the War Department, and as petitioner is now held in confinement in conformity to such established practice in execution of the judgments imposed by courts-martial, while such practice is not in harmony with that which obtains in civil courts of this country, yet I am fully convinced, from the fact he became an officer of the army engaged in the service of his

country, he is not entitled to insist on the rules of law applicable to sentences imposed by the civil courts of his country, in the exercise of their criminal jurisdiction, being now employed to effectuate his release from confinement legally imposed under the known and well-established practice and procedure followed by military courts in the exercise of their exclusive jurisdiction, and in conformity with the articles of war and regulations promulgated by the President for the government of the service to which he was subject when he committed the offenses charged, and to the authority of which he must bow.

It follows the return made by the warden must be held to be a complete justification for the restraint of petitioner, and the petition be dismissed.

It is so ordered.