## JOHNSON *v.* SAYRE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF VIRGINIA.

No. 871. Argued April 18, 1895. — Decided May 6, 1895.

In the Fifth Article of Amendments to the Constitution of the United States, providing that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger," the words "when in actual service in time of war or public danger" apply to the militia only.

A paymaster's clerk in the navy, regularly appointed, and assigned to duty on a receiving ship, is a person in the naval service of the United States, subject to be tried and convicted, and to be sentenced to imprisonment, by a general court martial, for a violation of section 1624 of the Revised Statutes.

Article 43 of the Articles for the Government of the Navy, (Rev. Stat. § 1624,) requiring the accused to be furnished with a copy of the charges and specifications "at the time he is put under arrest," refers to his arrest for trial by court martial; and, if he is already in custody to await the result of a court of inquiry, is sufficiently complied with by delivering the copy to him immediately after the Secretary of the Navy has informed him of that result, and has ordered a court martial to convene to try him.

The decision and sentence of a court martial, having jurisdiction of the person accused and of the offence charged, and acting within the scope of its lawful powers, cannot be reviewed or set aside by writ of *habeas corpus.*

THIS was an appeal from an order upon a writ of *habeas corpus*, discharging David B. Sayre, a paymaster's clerk in the navy, assigned to duty on the United States receiving ship Franklin, from the custody of Captain Mortimer L. Johnson, the commander of that ship, under a sentence of a naval court martial. The case appeared by the record to be as follows:

On July 6, 1893, the Secretary of the Navy signed and sent to Sayre an appointment in these terms: "Upon the nomination of Paymaster James E. Cann, U. S. N., you are hereby

appointed a paymaster's clerk in the United States Navy, for duty on board of the U. S. R. S. Franklin. Enclosed is a blank form of acceptance for your signature, also a blank oath of office, which you will duly execute and return with your letter of acceptance to the department; having done which, you will proceed to the navy yard, Norfolk, Virginia, and report to the commandant, on the 15th instant, for duty."

On July 10, 1893, Sayre took the oath of office, and returned it to the Secretary of the Navy, with an acceptance in these terms : " I hereby accept the appointment of paymaster's clerk, dated July 6, 1893, conferred on me ; and do hereby oblige and subject myself, during my service as paymaster's clerk, to comply with and be obedient to such laws, regulations and discipline of the navy as are now in force, or that may be enacted by Congress, or established by other competent authority ; and herewith enclose oath of office duly executed."

Sayre accordingly entered upon the performance of his duties as paymaster's clerk, under Paymaster Cann, on board the Franklin, which was the receiving ship at the navy yard in Norfolk, Virginia. Cann, besides being paymaster of the Franklin, was paymaster at Port Royal, South Carolina, and of the monitors at Richmond, Virginia ; and was therefore obliged to be away from the Franklin several days in each month.

On October 10, 1894, Sayre was put under arrest, by Captain Mortimer L. Johnson, commanding the Franklin, to await the investigation of a charge of embezzlement, and was thereafter held in custody. On October 13, the Secretary of the Navy ordered a court of inquiry to convene on October 16, at the navy yard in Norfolk, for the purpose of inquiring into the method in which the pay department of the Franklin had been conducted during the time covered by the service of Paymaster Cann on board of her ; and directed that Sayre be held in custody, but be permitted to attend the court of inquiry, and to consult with counsel and inspect the ship's papers. He was accordingly brought before the court of inquiry from day to day until October 19. The court of inquiry recommended that he be tried by court martial on the charge of embezzle-

ment; and he was informed of this by a letter to him from the Secretary of the Navy of October 25.

On October 25, the Secretary of the Navy also ordered a general court martial to convene at the navy yard in Norfolk on October 30, for the trial of Sayre, and of such other persons as might be legally brought before it.

The charge against Sayre was of "embezzlement, in violation of article fourteen of the Articles for the Government of the Navy," with a specification that "David B. Sayre, a pay clerk in the United States Navy, attached to and serving as such on board the United States receiving ship Franklin, at the navy yard, Norfolk, Virginia, having, on various dates between" July 15, 1893, and October 10, 1894, "been entrusted by Paymaster James E. Cann, United States Navy, the paymaster of said vessel, with sums of money belonging to the United States, in various amounts, furnished and intended for the naval service thereof, for disbursement for the purposes of said service during the temporary absence of said Paymaster Cann from the vessel, and having," on October 1, 1894, "receipted to the said Paymaster Cann for money so entrusted to his care as aforesaid," in the sum of $2701.44, did, between July 15, 1893, and October 10, 1894, "knowingly and wilfully misappropriate, and apply to his own use and benefit, from the money so entrusted to him at various times as aforesaid," the sum of $1971.11, "in violation of article 14 of the Articles for the Government of the Navy."

On October 26, a copy of the charge and specification was delivered to Sayre. The court martial met October 30, and sat from day to day until November 2. At its first meeting, Sayre was brought before it, and acknowledged that he had received a copy of the charge and specification. After they had been read, his counsel objected to the jurisdiction of the court, upon the ground that Sayre, being a paymaster's clerk, was a civilian, and not subject to trial by court martial; and also demurred, upon the ground that a paymaster's clerk could not be guilty of embezzlement of funds of the United States, because the paymaster only was vested with the management and control of those funds, and had no

power to delegate his authority to a clerk. The court martial decided that it had jurisdiction, and overruled the demurrer. Sayre then pleaded not guilty.

The facts that the accused was originally put under arrest on October 10, and that the copy of the charge and specification was first delivered to him on October 26, were not brought to the notice of the court martial, until they appeared upon the examination of Captain Johnson, the last witness called for the United States. Sayre's counsel thereupon moved that all the evidence introduced on the part of the United States be excluded, because the copy had not been served upon him until sixteen days after his arrest; and in support of this motion relied upon article 43 of the Articles for the Government of the Navy,[1] and article 1785 of the United States Navy Regulations.[2]

On November 2, the court martial, after arguments of the defendant's counsel and of the judge advocate upon this motion, and upon the whole case, overruled the motion, and found the specification proved, and the accused guilty of the charge; and sentenced him "to be confined, in such a place as the Honorable Secretary of the Navy may designate, for the

---

[1] The person accused shall be furnished with a true copy of the charges, with the specifications, at the time he is put under arrest; and no other charges than those so furnished shall be urged against him at the trial, unless it shall appear to the court that intelligence of such other charge had not reached the officer ordering the court when the accused was put under arrest, or that some witness material to the support of such charge was at that time absent and can be produced at the trial; in which case reasonable time shall be given to the accused to make his defence against such new charge. Rev. Stat. § 1624, art. 43.

[2] 1. It is entirely within the discretion of the officer empowered to convene a court martial to direct what portions of the complaint against an accused shall be charged against him.

2. When, therefore, such competent officers shall decide to have a party tried by court martial, he will cause such charges and specifications against him to be prepared as he may concider proper, and will transmit a true copy of them, with an order for the arrest or confinement of the accused, to the proper officer, who will deliver such order to the accused, and will carry it into effect by delivering to him the copy of the charges and specifications, and, if an officer, by receiving his sword. Navy Regulations of 1893, art. 1785, p. 462.

period of two years ; " to lose his pay during his confinement, to the amount of $2210 ; and then to be dishonorably dismissed from the naval service of the United States.

On November 17, the Secretary of the Navy approved the proceedings, finding and sentence of the court martial, and ordered the sentence to be duly executed ; and designated the prison at the navy yard in Boston, Massachusetts, as the place for the execution of so much of the sentence as related to confinement ; and directed him to be transferred, under a suitable guard, to that prison, to be there confined in accordance with the terms of his sentence.

On November 21, upon the petition of Sayre, the Circuit Court of the United States for the Eastern District of Virginia ordered a writ of *habeas corpus* to issue to Captain Johnson. The return to the writ stated that Captain Johnson held Sayre under the order of the Secretary of the Navy of November 17. Upon a hearing, the court, held by the District Judge, considered, as stated in his opinion on file and sent up with the record, entitled "finding of the court," that Sayre was unlawfully restrained of his liberty, because detained under a sentence to an infamous punishment, not in time of war or public danger, without indictment or trial by jury, in violation of the Fifth Article of Amendment of the Constitution of the United States, " but without prejudice in any other respect to the sentence of the court martial; " and therefore ordered him to be discharged from custody. Captain Johnson appealed to this court.

Mr. *Littleton W. T. Waller*, by special leave of court, for appellant. Mr. *Solicitor General* was on his brief.

Mr. *John W. Happer* and Mr. *A. E. Warner* for appellee.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

By the Fifth Article of Amendment of the Constitution of the United States, "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or

indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger."

The decision below is based upon the construction that the words " when in actual service in time of war or public danger " refer, not merely to the last antecedent, " or in the militia," but also to the previous clause, " in the land or naval forces." That construction is grammatically possible. But it is opposed to the evident meaning of the provision, taken by itself, and still more so, when it is considered together with the other provisions of the Constitution.

The whole purpose of the provision in question is to prevent persons, not subject to the military law, from being held to answer for a capital or otherwise infamous crime, without presentment or indictment by a grand jury.

All persons in the military or naval service of the United States are subject to the military law; the members of the regular army and navy, at all times; the militia, so long as they are in such service.

By article 1, section 8, of the Constitution, Congress has power "to raise and support armies;" "to provide and maintain a navy; to make rules for the government of the land and naval forces; to provide for calling forth the militia to execute the laws of the Union, suppress insurrections and repel invasions; to provide for organizing, arming, and disciplining the militia, and for governing such part of them as may be employed in the service of the United States;" and to make all laws necessary and proper for carrying into execution the foregoing powers, and all other powers vested by the Constitution in the government of the United States, or in any department or officer thereof.

Congress is thus expressly vested with the power to make rules for the government of the whole regular army and navy at all times; and to provide for governing such part only of the militia of the several States, as, having been called forth to execute the laws of the Union, to suppress insurrections, or to repel invasions, is employed in the service of the United States.

By article 2, section 2, of the Constitution, " the President shall be commander in chief of the army and navy of the United States, and of the militia of the several States, when called into the actual service of the United States."

The President is thus, in like manner, made commander in chief of the army and the navy of the United States at all times; and commander in chief of the militia, only when called into the actual service of the United States.

The Fifth Article of Amendment recognizes the like distinction, between the regular land and naval forces and the militia, as to judicial authority, that the Constitution, as originally adopted, had recognized as to the legislative and the executive. It might as well be held that the words " when called into the actual service of the United States," in the clause concerning the authority of the President as commander in chief, restrict his authority over the army and navy, as to hold that the like words, in the Fifth Amendment, relating to the mode of accusation, restrict the jurisdiction of courts martial in the regular land and naval forces.

The necessary construction is that the words, in this amendment, " when in actual service in time of war or public danger," like the corresponding words, in the First Article of the Constitution, " call[ed] forth to execute the laws of the Union, suppress insurrections and repel invasions," and " employed in the service of the United States," and those, in the Second Article, " when called into the actual service of the United States," apply to the militia only.

This construction has hitherto been considered so plain and indisputable, that it has been constantly assumed and acted on by this court, without discussion. *Dynes* v. *Hoover*, 20 How. 65; *Ex parte Reed*, 100 U. S. 13; *Ex parte Mason*, 105 U. S. 696; *Kurtz* v. *Moffatt*, 115 U. S. 487, 500; *Smith* v. *Whitney*, 116 U. S. 167, 186. See also 1 Kent Com. 341, note; Miller on the Constitution, 506, 507; *In re Bogart*, 2 Sawyer, 396; 12 Opinions of Attorneys General, 510.

Upon an appeal from the Circuit Court of the United States in a case of *habeas corpus*, all questions of law or of fact, arising upon the record, including the evidence, are open to con-

sideration; and the Circuit Court has no authority to make conclusive findings of fact, as it might do in actions at law upon waiver of a jury, or in cases in admiralty. *In re Neagle*, 135 U. S. 1, 42; *Bond* v. *Dustin*, 112 U. S. 604; *Ralli* v. *Troop*, 157 U. S. 386, 417.

The suggestion, in the opinion below, that "the prison at Boston is shown in evidence to be one of narrow cells and limited appliances for comfort, and such as would seem to render confinement in it for a long term a punishment which the law regards as 'cruel and unusual,'" and forbidden by the Eighth Article of Amendment of the Constitution, is unsupported by anything in the record. The remarks of the Secretary of the Navy, in the General Order of March 25, 1871, No. 162, cited by the learned judge, as to the condition of the prisons at the command of the department at that time, have no tendency to show what is the present condition of any of those prisons. And no point of the kind was made at the argument in this court.

By the Articles for the Government of the Navy, established by Congress, under the power conferred upon it by the Constitution, "fine or imprisonment, or such other punishment as a court martial shall adjudge, shall be inflicted upon any person in the naval service of the United States," "who steals, embezzles, knowingly and wilfully misappropriates, applies to his own use or benefit, or wrongfully and knowingly sells or disposes of any ordnance, arms, equipments, ammunition, clothing, subsistence stores, money or other property of the United States, furnished or intended for the military or naval service thereof;" and "all offences committed by persons belonging to the navy while on shore shall be punished in the same manner as if they had been committed at sea." Rev. Stat. § 1624, arts. 14, 23. But service on a receiving ship, even if she is at anchor at a navy yard, and not in a condition to go to sea, is "sea service," within the meaning of the statute giving officers "at sea" a higher rate of pay than when "on shore duty." Rev. Stat. § 1556; *United States* v. *Symonds*, 120 U. S. 46; *United States* v. *Strong*, 125 U. S. 656.

By. the Revised Statutes, certain paymasters, including those on receiving ships or at naval stations, are each allowed a clerk; the pay of the clerk is fixed; and he may become entitled to bounty land, or to a pension. Rev. Stat. §§ 1386, 1556, 2426, 4695. He is not, indeed, deemed one of the petty officers, who are entitled to obedience, in the execution of their offices, from persons of inferior ratings. Rev. Stat. § 1410. Nor is he entitled to mileage, as an "officer of the navy," under the act of June 30, 1876, c. 159. 19 Stat. 65; *United States* v. *Mouat*, 124 U. S. 303. But he is included among "officers and enlisted men in the regular or volunteer army or navy," and as such entitled to longevity pay, under the act of March 3, 1883, c. 97. 22 Stat. 473; *United States* v. *Hendee*, 124 U. S. 309.

The appointment and acceptance of Sayre as paymaster's clerk were in accordance with the Regulations for the Government of the Navy, established February 23, 1893, by the Secretary of the Navy, with the approval of the President, pursuant to section 1547 of the Revised Statutes. Navy Regulations of 1893, art. 1697, p. 438.

He was therefore, as has been directly adjudged by this court, a person in the naval service of the United States, and subject to be tried and convicted, and to be sentenced to imprisonment, by a general court martial. *Ex parte Reed*, 100 U. S. 13.

The provision of article 43 of the Articles for the Government of the Navy, which prescribes that "the person accused shall be furnished with a true copy of the charges, with the specifications, at the time he is put under arrest," (on which Sayre relied before the court martial, and in this court,) evidently refers, as appears by the very next article, to the time when he "is arrested for trial" by court martial, and not to the time of any previous arrest, either by way of punishment, or to await the action of a court of inquiry. Rev. Stat. § 1624, arts. 24, 43, 44, 55. Sayre, being already in custody to await the result of a court of inquiry, could not be considered as put under arrest for trial by court martial, before the Secretary of the Navy had informed him of the report of the court of

inquiry, and had ordered a court martial to convene to try him. Immediately after that, and four days before the court martial met, he was furnished with a copy of the charge and specification on which he was to be tried. This was a sufficient compliance with the article in question. And it is, at the least, doubtful whether the objection that it had not been sooner delivered to him did not come too late, after he had admitted before the court martial that he had received a copy of the charge and specification, and after objections to the jurisdiction of the court and to the form of the accusation had been made and overruled, and he had pleaded not guilty, and the evidence for the United States had been introduced.

The court martial having jurisdiction of the person accused and of the offence charged, and having acted within the scope of its lawful powers, its decision and sentence cannot be reviewed or set aside by the civil courts, by writ of *habeas corpus* or otherwise. *Dynes* v. *Hoover*, 20 How. 65, 82; *Ex parte Reed*, 100 U. S. 13; *Ex parte Mason*, 105 U. S. 696; *Smith* v. *Whitney*, 116 U. S. 167, 177–179.

*Order reversed, with directions to remand Sayre to custody.*