Booti-i, J.,
delivered the opinion of the court:
Commander Mullan, the claimant herein, while serving as commandant at the navy-yard at Pensacola, Fla., learned of certain accusations of misconduct having been preferred *171 against him to the Navy Department. Desiring to refute the same, he requested the Navy Department to refer them for investigation to a court of inquiry. Complying with his request, the Navy Department ordered a court of inquiry to be convened at the navy-yard at Pensacola, Fla., for the purpose of investigating the same. The result of the court of inquiry’s investigation was a finding adverse to the claimant. Not' being satisfied with the finding of the court of inquiry, claimant again appealed to the Navy Department requesting the Secretary of the Navy to convene a court-martial for an investigation of said charges. Complying with this request, the Navy Department did convene a court-martial at the navy-yard, Washington, D. C., for the purpose of trying claimant upon such parts of the findings of the court of inquiry as it deemed proper to charge against him.
The correspondence leading up to and resulting in the assembling of the court-martial is fully set out in the findings. The sentence of the court-martial was likeAvise adverse to the claimant, and he would thereunder have been dismissed from the Navy save for the order of the President, as set out in Finding XI.
This suit is for the recovery of the difference in pay between the amount paid him after the sentence of the court-martial and the amount alleged to be due as waiting orders pay. The case involves the legality of the court-martial.
Civil courts are precluded from setting aside or reviewing the proceedings and sentences . of courts-martial where it affirmatively appears that they were legally constituted and had jurisdiction of the offense charged against the person of the accused and complied with the statutory regulations governing their proceedings. (Dynes v. Hoover, 20 How., 65; Ex parte Reed, 100 U. S., 13; Smith v. Whitney, 116 U. S., 167; Johnson v. Sayre, 158 U. S., 109; Swaine v. United States, 165 U. S., 553; Carter v. McClaughry, 183 U. S., 365; McClaughry v. Deming, 186 U. S. 49.)
Claimant first challenges the jurisdiction of the court-martial over the subject-matter of the offense charged, predicating the same upon the condition imposed by the Secretary of r the Navy as to the admissibility of the evidence adduced before the court of inquiry as evidence before the court-martial, *172 the Secretary manifestly having refused to accede to claimant’s request for a court-martial unless the admissibility of the same was previously agreed to; and upon said testimony being' inadmissible before the court-martial under article 60 of section 1624, Revised Statutes; and being so could not be validated by stipulation of the parties.
Article 60, section 1624, Revised Statutes, reads as follows :
“ The proceedings of courts of inquiry shall be authenticated by the signature of the president of the court and of the judge-advocate, and shall, in all cases not capital nor extending to the dismissal of a commissioned or warrant .officer, be evidence before a court-martial, provided oral testimony can not be obtained.”
It is to be observed that claimant’s privilege to have the accusations made against him to the Navy Department first investigated by a court of inquiry and again investigated by a court-martial, the supreme military tribunal, was not a matter of statutory or military right. No charges had been preferred against the claimant by the Navy Department and no effort had been made or was being made by the Department to secure his dismissal from the service because of the accusations against him, so far as the record before us discloses. The Secretary of the Navy was vested with power to convene such a tribunal, but also with discretion as to convening the same. Claimant had made an appeal for the exercise of the Secretary’s discretion, but he nevertheless still had the right and privilege to reject or accede to the stipulation respecting the waiver of statutory requirements as to the admissibility of testimony prior to the convening of the court-martial. The convening of the court-martial was entirely for his benefit, for unless he could acquit himself of the charges preferred he would be shortly liable under the provisions of the act of August 5, 1882, section 1447, Revised Statutes, providing for his promotion, to which he was at the time eligible, to be discharged from the service with not more than one year’s pay. The Navy Department could ivell have rested the case upon the findings of the court of inquiry in so far as claimant’s right to promotion was concerned. Moved, no doubt, by a desire to afford to the claimant every available *173 proceeding to acquit himself of the charges preferred against him, that he might secure the benefit of the act of August 5, 1882 (supra), his request for a second investigation was granted. It is not contended that claimant or his counsel were ignorant of the existence of or terms of article 60, section 1624, of the Revised Statutes. The correspondence between claimant and Secretary of the Navy respecting the admissibility of this testimony indicate a full knowledge upon his part as to the statutes relating thereto.
During the progress of the trial the agreement was observed by claimant and his counsel and no objection entered of record to the production and consideration of said evidence by the court-martial. The question of waiver is usually one of fact. The right itself has some limitations grounded upon the doctrine of public policy. The rule, however, is well established that one. may waive the advantage of a law intended for his benefit where the waiver does n.ot affect the rights of others or contravene the public good. It is asserted, however, with much earnestness that article 60, supra, being legislation for the mutual benefit of both claimant and defendants, was mandatory and not subject to waiver. The purpose of the statute was to so limit and circumscribe the proceedings of courts-martial as to secure to the accused the right to be confronted with the witnesses against him in cases extending to capital punishment and dismissal from the service — the extreme penalties imposed for violation of military law. While confined within narrower limits than the rights secured to persons in civil life accused of crime under Article VI of the Federal Constitution, its intent is similar thereto, the Congress by its passage seeking to extend to the military officers of the Government accused of military offenses and subject only to the jurisdiction of military tribunals the same guarantees extended to those in civil life similarly accused, subject to trial before civil tribunals.
It is to be observed that the proceedings of a court of inquiry are not admissible under the statute in any case unless it affirmatively appears that oral testimony is unobtainable, thus securing to the accused even in minor offenses the right to exclude the findings of a court of inquiry, except in those extraordinary cases where all oral testimony as to the *174 event has disappeared. The statute in its entirety seems to clearly indicate an intention to surround the accused with that high degree of protection whereby he may be legally assured that he will not be summarily divested of his rights under the law — a guaranty identical in most respects with that extended to civil persons in the bill of fights (art. 6, Constitution). In Reynolds v. United States (98 U. S., 158, 159), a case wherein the constitutional provision respecting the right of the accused to be confronted with witnesses against him was directly involved, Chief Justice Waite, speaking for the court, uses this language:
“ The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him, but if he voluntarily keeps the witnesses away he can not insist on his privilege.”
Again he says:
“ So that now in the leading text-books it is laid down that if a witness is kept away by the adverse party, his testimony, taken on a former trial between the same parties upon the same issues, may be given in evidence.”
True, in the case at bar the witnesses against the accused were not prevented from attending through the intervention of any wrongful act upon his part. Yet the stipulation waiving the right to insist upon their presence, if not binding, would have put the accused in the attitude of having secured the second hearing before a court-martial upon false representations. The claimant voluntarily surrendered an express provision of law, the complete import of which he well knew. By so doing'he acquired another right not given to him by law, to again present his defense to serious accusations against himself. If he is now permitted to avail himself of a defense in a civil tribunal which he might have presented to the tribunal having full jurisdiction at the time of the hearing, he will be in effect permitted to contravene the consequences of his own voluntary act and repudiate now an agreement which should in justice have been repudiated then, if at all. In the case of Williams v. The State (61 Wis., 281) the question of the right to waive a constitutional guaranty *175 similar to that in article 6 of the Federal Constitution arose. The accused had been convicted of murder in the first degree. The evidence of a witness given before the coroner’s inquest was read to the jury by the consent and stipulation of the State’s attorney and the attorney, for the defendant. In affirming the judgment of the trial court the Supreme Court said:
“ But it is said that, as the Constitution provides that the accused shall enjoy the right to meet the witnesses face to face, he can not waive that right, and therefore the stipulation of the counsel that it might be read goes for naught. It is well settled that the accused may waive his right to be confronted with the witnesses on the trial.”
In the case of State v. Polson (29 Iowa, 133), the court said:
“ It will be observed that the right secured by this provision to the accused, to be confronted with the witnesses against him, is a personal right limited to proceedings in criminal prosecutions, or where the life or liberty of the citizen is involved. The provision is not in the nature of an inhibition upon a proceeding not in accord with the one secured.' Neither is it in the nature of a jurisdictional limitation upon the authority of the court, prohibiting the exercise of power except in the manner specified. It simply secures a personal right, and in no manner affects the jurisdiction of the court when prosecutions are tried. It very clearly appears that this right in proper cases, when no wrong can be done the accused, may be by him voluntarily waived. * * * It has been expressly ruled that when a prisoner permits illegal testimony to be given to the jury without objection, he can not afterwards raise any claim of privilege on account of the admission of such evidence.”
In the case of Warren v. Glynn (37 N. H., 340), the court said:
“ Indeed the authorities are too numerous for citation, where it has been held that a party, cognizant in the earlier stages thereof, of an objection that might be fatal to the validity of a proceeding before a tribunal otherwise competent, can not be permitted to lie by and take his chances of a result in his favor, and, after one has been arrived at against him, avail himself of that objection to avoid the consequences of such adverse result.”
*176 To the same effect are sections 118 and 1205, 1 Bishop, on' Criminal Procedure. Indeed, the question is too well settled to admit of further citations.
While the constitutional provision to which we have referred has no application to the proceedings of courts-martial and is applicable only to criminal prosecutions in the civil courts of the United States, its interpretation by the civil courts is nevertheless exceedingly persausive in giving-effect to a legislative enactment to accomplish a similar intent in proceedings of courts-martial.'
On March 15, 1825, ITon. William Wirt, then Attorney- . General for the United States, responding to a request from the Secretary of the Navy in reference to the legal effect of a waiver of the privileges set out in the ninety-first article of war, said: .
“ It is a settled rule of law that no evidence is to be given against a prisoner but in his presence. This, however, is a privilege for the benefit of the prisoner, which it is perfectly competent for him to waive; and, as I understand j^our letter of the 12th, it has been waived in the case therein stated, by the consent of the officer who is about to be put upon his trial, and the depositions of witnesses abroad, taken upon interrogatories and cross-interrogatories, should be used on the trial. I do not think that the point of time at which this consent was expressed will affect the competency of the testimony.”
We have been unable, after a most careful and exhaustive research of the authorities, both military and civil, to discover an opinion contrary to this rule. The evidence adduced before a board of inquiry is surrounded by all the solemnities of evidence taken in a court of record or before a court-martial. The accused is personally present and represented by counsel. The right of cross-examination prevails and every legal inhibition as to its competency or relevancy can be raised at the hearing. While it is a court of inferior jurisdiction and its findings usually advisory, its proceedings are not in anywise summary. The evidence adduced and preserved before courts of inquiry is superior in every respect to depositions. An accused thus arraigned can not plead ignorance of the testimony against him or hope by subsequent examination of the same witnesses, in the same *177 cause, between the same parties, to materially change their testimony.
We therefore conclude that the provisions of the statute governing the admissibility of the findings of the court of inquiry were not departed from by the proceedings of the court-martial.
We are unable to see how the objections now raised as to the departure from article 60, section 1624, Revised Statutes, in any manner goes to the jurisdiction of the court-martial. Were that the only question involved the case would be one of easy solution. The mere effect of the stipulation being-made a matter of record at the convening of the tribunal did not preclude the claimant as á matter of right from contesting its validity at the time of the trial. In fact, the correspondence relative thereto- shows upon its' face a submission of this question to the court-martial. The statute in question is not in any manner a limitation upon the jurisdiction of the court-martial. The authority of the tribunal is not prescribed by its terms. It is merely a legal regulation as to its proceedings securing- certain rights to the accused, which in the absence of an express waiver upon his part, must be accorded him by the tribunal or subject their findings or sentence to collateral attack in civil courts, and as such we have treated it. The allegation of duress with respect to the stipulation aforesaid is without merit. There were absolutely no circumstances surrounding the execution of the instrument which even tended to limit the free agency of the accused; he was not precluded thereby from introduction of additional testimony. Finding X discloses that he did produce an additional witness, and the stipulation simply included the testimony of the witnesses upon the former hearing without any comment on the findings of the court. No rights of the accused were violated in respect to the convening of the court-martial, for, as before observed, accused was not entitled under any law to have such a tribunal convened. It was for his express benefit that he sought to invoke its aid in an appeal to the Navy Department.
Claimant’s second contention goes to the validity of the President’s action in respect to the sentence imposed upon *178 the claimant by tlie court-martial, it being asserted that the action of the President in issuing- his order of July 8, 1897 (Finding XI), was contrary to article 54, section 1624, Revised Statutes, in that it commuted the sentence of the court-martial, whereas only power to mitigate was authorized.
Article 54, section 1624, Revised Statutes, is in these words:
“ Every officer who is authorized to convene a general Court-martial shall have power, on revision of its proceedings, to remit or mitigate, but not to commute, the sentence of any such court which he is authorized to approve and confirm.”
Granting arguencL'o without deciding the correctness of the position taken, we are of the opinion that the statute in question has no application to the President.
The court-martial having been legally constituted and having had jurisdiction of the subject-matter charged, and the person of the accused and its proceedings and sentence having complied with all statutory regulations governing the same, the petition herein will be dismissed.
Petition is dismissed.