Guy E. HARKCOM, Petitioner,

v.

J. J. PARKER, Respondent.

No. 1093.

United States District Court,
M. D. Pennsylvania.

Feb. 13, 1970.

Guy E. Harkcom, pro se.

S. John Cottone, U. S. Atty., Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., Arnold I. Melnick, Lieutenant Colonel, JAGC, Richard F. Locke, Capt., JAGC, Office of The Judge Advocate Gen., Dept. of the Army, Washington, D. C., for respondent.

## OPINION

FOLLMER, Senior District Judge.

This case is before this court on a petition for a writ of habeas corpus filed by Guy E. Harkcom, an inmate at the United States Penitentiary, Lewisburg, Pennsylvania, to which a Rule to Show Cause was issued by this court. An answer was submitted by respondent and subsequently, petitioner filed a traverse to the said answer. The Department of the Army has furthermore furnished this court with the records relevant to this case.

Petitioner, while serving as a soldier, grade of Sergeant, in the United States Army, was convicted on May 23, 1960, at Fort Dix, New Jersey, of the following offenses: (a) attempted rape, in violation of Article 80, Uniform Code of Military Justice (10 U.S.C. § 880); (b) rape, in violation of Article 120, Uniform Code of Military Justice (10 U.S.C. § 920); (c) kidnapping, in violation of Article 134, Uniform Code of Military Justice (10 U.S.C. § 934); (d) kidnapping, in violation of Article 134, Uniform Code of Military Justice (10 U.S.C. § 934).

Petitioner was sentenced to be dishonorably discharged from the service, to be reduced in grade to Private (E–1), to forfeit all pay and allowances, and to be confined at hard labor for life.[1]

Following his conviction, petitioner appealed to the Board of Review, United States Army. On October 7, 1960, this appellate body affirmed the disposition of the General Court-Martial. Petitioner then filed a petition for a grant of review with the Court of Military Appeals. On March 24, 1961, the court in an opinion reported at 12 USCMA 257 affirmed the decision of the Board of Review. Petitioner has therefore exhausted his military remedies.

The primary issue raised by petitioner is whether the principles announced by the United States Supreme Court in O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), are applicable to his case.

In his petition, relator also avers that statements were introduced at his trial in violation of his privilege against self-incrimination. However, an examination of the record shows that relator never raised this issue for adjudication prior to the filing of this petition. Thus the military courts have not had the opportunity to pass on the merits of this contention. In Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953), the Supreme Court discussed the scope of review in federal courts vis-a-vis courts-martial. They said there that "It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims." Id., at 144, 73 S.Ct. at 1050. Obviously, it cannot be said that there has been a refusal to fairly consider claims that were never raised. Suttles v. Davis, 215 F.2d 760 (10th Cir. 1954). See also, Palomera v. Taylor, 344 F.2d 937 (10th Cir. 1965); Burns v. Harris, 340 F.2d 383 (8th Cir. 1965), cert. denied 382 U.S. 960, 86 S.Ct. 439, 15 L.Ed.2d 363 (1965).

We therefore turn to the allegation that the military court lacked the requisite jurisdiction to try petitioner for the offenses for which he was charged.

1. As the result of clemency action taken by the Secretary of the Army in the four year period 1965–1969, petitioner's sentence was reduced from life to thirty-one years.

The majority of the Court in O'Callahan v. Parker, supra, held that a member of the Armed Forces who is charged with the commission of a crime cognizable in a civilian court and having no military significance or connection is entitled to his constitutional rights of indictment by a grand jury and trial by a petit jury in a civilian court, and that a court-martial proceeding has no jurisdiction over such crimes.

Respondent in his answer argues that *O'Callahan* should not be applied retroactively. Alternatively, it is urged that even if this court should determine that *O'Callahan* must be applied retroactively, the facts of the present case would not warrant its application.

■ In determining how a new constitutional standard should be applied we are aided by guidelines enunciated by the Supreme Court. Thus in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Court made this observation:

> Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. . . . Id., at 629, 85 S.Ct. at 1738.

In Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Court stated that "The criteria guiding resolution of the question implicates (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Id., at 297, 87 S.Ct. at 1970.

■ Turning to the application of these guidelines, I am of the opinion that all three factors favor the prospective application of the rule stated in O'Callahan v. Parker.

DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), is helpful in resolving the question of whether "the purpose to be served by the new standard" dictates retroactive application. In *DeStefano*, the Court was faced with the question of whether Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), should be given retroactive application. *Duncan* had held that the States cannot deny a request for jury trial in serious criminal cases. In holding that *Duncan* be prospectively applied the Court made the following observation, "As we stated in *Duncan*, 'We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury.' (Citation omitted.) The values implemented by the right to jury trial would not measurably be served by requiring retrial of all persons convicted in the past by procedures not consistent with the Sixth Amendment right to jury trial." Id., 392 U.S. at 633, 634, 88 S.Ct. at 2095.

Similarly, the holding in *O'Callahan* is not a wholesale condemnation of courts-martial procedure. Furthermore, I do not read *O'Callahan* as intimating that all past courts-martial were unfair. Accordingly, the purpose of the rule would not significantly be served by requiring a retrial of all persons fitting the necessary requirements of the rule.

There seems to be little question but that the military had justifiably relied on the old standard. Mr. Justice Harlan in his dissent to the majority ruling in *O'Callahan*, made this observation:

> . . . In Kinsella v. [United States ex rel.] Singleton, 361 U.S. 234 [80 S.Ct. 297, 4 L.Ed.2d 268], (1960), again looking to the constitutional language, the Court noted that 'military jurisdiction has always been based on the "status" of the ac-

cused, rather than on the nature of the offense,' id., at 243 [80 S.Ct. at 302], that is, whether the accused 'is a person who can be regarded as falling within the term "land and naval Forces." ' Id., at 241 [80 S.Ct. at 301].

In these cases and many others, Ex parte Milligan, 4 Wall. 2, 123 [8 L.Ed. 281], (1866); Coleman v. Tennessee, 97 U.S. 509 [24 L.Ed. 1118], (1879); Smith v. Whitney, 116 U.S. 167, 184–185 [6 S.Ct. 570, 579, 29 L.Ed. 601], (1886); Johnson v. Sayre, 158 U.S. 109, 114 [15 S.Ct. 773, 775, 39 L.Ed. 914], (1895); Grafton v. United States, 206 U.S. 333, 348 [27 S.Ct. 749, 752, 51 L.Ed. 1084], (1907), this Court has consistently asserted that military 'status' is a necessary *and sufficient* condition for the exercise of court-martial jurisdiction. The Court has never previously questioned what the language of Clause 14 would seem to make plain—that, given the requisite military status, it is for Congress and not the Judiciary to determine the appropriate subject-matter jurisdiction of courts-martial. (Citation omitted.) 395 U.S. 258, 275, 276, 89 S.Ct. 1683, 1692, 23 L.Ed.2d 291.

Finally, the effect on the administration of justice would be substantial if *O'Callahan* was applied retroactively. The Department of the Army has informed me that since 1917 there have been four million courts-martial in the Army alone. The number of convictions affected by retroactive application would run far into the thousands. It requires little imagination to envision the awesome burden that would be placed on the courts, both federal and military, if this decision was given retroactive application.

For the reasons given therefore, it is the opinion of this court that O'Callahan v. Parker, supra, does not apply retroactively.

Accordingly, the petition of Guy E. Harkcom for a writ of habeas corpus will be dismissed.