Slater **WILLIAMS**, Plaintiff-Appellant,

v.

Robert F. **FROEHLKE**, Secretary of the Army, Defendant-Appellee.

No. 229, Docket 73–1682.

United States Court of Appeals, Second Circuit.

Submitted Dec. 6, 1973.

Decided Jan. 14, 1974.

Paul J. Curran, U. S. Atty., S. D. N. Y. (Taggart D. Adams and V. Pamela Davis, Asst. U. S. Attys., of counsel), New York City, for defendant-appellee.

Covington, Howard, Hagood & Holland, New York City (George Donald Covington and Lawrence S. Cumberbatch, New York City, of counsel), for plaintiff-appellant.

Before WATERMAN and FEINBERG, Circuit Judges, and GURFEIN,* District Judge.

GURFEIN, District Judge.

Slater Williams was a soldier serving in the United States Army in Germany. On July 12, 1960, while the country was at peace, Williams, in civilian clothes robbed a German citizen in Germany. He was tried by a general court-martial, and on September 25, 1960, convicted of robbery (10 U.S.C. § 922),[1] disrespect (10 U.S.C. § 891) and communication of a threat (10 U.S.C. § 934). He was sentenced to five years at hard labor and a dishonorable discharge. Appellant served his term and then brought an action in the United States District Court for the Southern District of New York

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. Article 122 of the Uniform Code of Military Justice.

to compel defendant Froehlke, Secretary of the Army, to set aside his conviction and to order the Army Board for Correction of Military Records to grant him an honorable discharge. He based jurisdiction on 28 U.S.C. § 1361 ("in the nature of mandamus").[2]

Williams contended that under O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1961), the court-martial had no jurisdiction to try him for the offense of robbery against a civilian while he was away from the Army post. He also asserted other grounds not pressed upon this appeal.

The Secretary moved to dismiss the complaint, or for summary judgment, asserting *inter alia*, that (1) O'Callahan should not be applied retroactively; and (2) that, even if O'Callahan is applied retroactively, there was jurisdiction in the court-martial, because O'Callahan does not apply to courts-martial held outside the territorial limits of the United States.

Judge Lasker, in a carefully considered opinion, granted the motion for summary judgment in favor of the defendant. He held that O'Callahan was retroactive in its application under the decision of this Court in United States ex rel. Flemings v. Chafee, 458 F.2d 544 (2 Cir. 1972), noting that certiorari had been granted sub nom. Warner v. Flemings, 407 U.S. 919, 92 S.Ct. 2461, 32 L.Ed.2d 805 (1972). Judge Lasker could not foresee, of course, that the Supreme Court would reverse this Court in Warner v. Flemings, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed. 2d 873 (1973), also cited as Gosa. v. Mayden. He properly concluded that, since he was bound by the decision of this Court to the effect that O'Callahan was, indeed, retroactive, he was required to determine whether O'Callahan was to be applied extraterritorially. Judge Lasker decided that it was not. This appeal follows.

We now face the issues: (1) Did a majority in the Supreme Court hold that O'Callahan was retroactive? (2) Assuming O'Callahan to be retroactive, did the court-martial have a constitutional as well as a statutory jurisdiction to try Williams for the crime of robbery committed against a German civilian in Germany?

The decision of this Court in *Flemings, supra,* was reversed by a vote of 7 to 2. Four justices based the reversal upon the ground that O'Callahan was not to be applied retroactively, while Mr. Justice Stewart and Mr. Justice Douglas concluded, as did Mr. Justice Rehnquist in a separate opinion, that the crime involved in *Flemings* was "service connected" so as to support proper jurisdiction in the court-martial even under O'Callahan.

In the companion case of Gosa v. Mayden, however, the *sole* issue was whether O'Callahan was to be applied retroactively, since the Government had conceded in the Court of Appeals "that the offense was not service connected." 413 U.S. at 665, 93 S.Ct. at 2929. See Gosa v. Mayden, 450 F.2d 753 (5 Cir. 1971).

The Supreme Court, squarely faced with the issue (which it had found unnecessary to decide in Relford v. United States Disciplinary Commandant, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971)) divided in Gosa v. Mayden, *supra,* on whether O'Callahan was to be applied retroactively. Four justices, the plurality opinion being written by Mr. Justice Blackmun, held that O'Callahan was not to be applied retroactively. Mr. Justice Marshall wrote a dissenting opinion, concurred in by Mr. Justice Brennan and Mr. Justice Stewart, in which he determined that O'Callahan must be applied retroactively because O'Callahan had decided that there was no constitutional jurisdiction in courts-martial to adjudicate nonservice-connected offenses. Mr. Justice Rehnquist

2. Jurisdiction is not challenged on this appeal. We note that in Warner v. Flemings, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), the Supreme Court assumed there was jurisdiction, for it decided the case on the merits.

agreed that under controlling precedents *O'Callahan* would have retroactive effect, but voted to overrule *O'Callahan*. Mr. Justice Douglas did not reach the merits in *Gosa* because he believed that the issue was simply whether appellant's failure to raise the *O'Callahan* issue in the military courts had made the matter res judicata. Since *O'Callahan* was not overruled, Mr. Justice Rehnquist must be counted with the dissenters in *Gosa* as believing that *O'Callahan* is retroactive. Mr. Justice Douglas' view on the issue remains unexpressed.

■ In these circumstances, sitting as an intermediate appellate court, we think that if this case can be decided without a specific ruling on whether *O'Callahan* is retroactive, we should do so. We affirm on the ground that, even if *O'Callahan* is retroactive, its reach does not extend to the jurisdiction of courts-martial in peace time to try non-service offenses committed by servicemen against foreign persons in foreign lands.

The Uniform Code of Military Justice provides in Article 122 (10 U.S.C. § 922) that "[a]ny person subject to this chapter who . . . takes anything of value from [a] person . . . against his will, by means of force or violence . . . is guilty of robbery . . . ." Williams was a person "subject to this chapter." 10 U.S.C. § 802. And "[t]his chapter applies in all places." 10 U.S.C. § 805.[3]

■ There is no doubt of the congressional intention to subject persons by virtue of their status as servicemen to military jurisdiction. Nor had there been serious question that military jurisdiction based on status was within the constitutional power of the Congress under Art. I, § 8, cl. 14 of the Constitution, "To make Rules for the Government and Regulation of the land and naval Forces." Kinsella v. Singleton, 361 U.S. 234, 240–241, 243, 80 S.Ct. 297, 300, 4 L.Ed.2d 268 (1960), Reid v. Covert, 354 U.S. 1, 22–23, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957).

When the problem of jurisdiction over a nonservice-connected offense by a person in the armed services was presented in *O'Callahan*, the majority decision on "jurisdiction" could have been determined either on the basis of a lack of constitutional jurisdiction of the court-martial to adjudicate,—a true jurisdictional lack—or on the basis of a statutory interpretation that subjected the military competence to its narrowest terms consistent with Fifth and Sixth Amendment guarantees. If the nub of the decision were the former, its implication would be that the constitutional power granted to establish courts-martial did not extend to offenses which were not service connected. If the latter, "jurisdiction" would not be a matter of the competence of the tribunal to adjudicate, but rather, as Mr. Justice Douglas has told us recently, "jurisdiction" may mean a requirement that constitutional guarantees exist, even though the competence of the tribunal is otherwise assumed. See Gosa v. Mayden, *supra*, 413 U.S. at 689, 93 S.Ct. at 2941, and note 5. Since he was the author of *O'Callahan*, Mr. Justice Douglas' gloss upon his own opinion implies that the plurality in that case was not thinking of lack of jurisdiction to try civilian offenses in the strict sense of a lack of tribunal competence, but rather as a balancing of individual rights against a conceded constitutional competence of the tribunal. His comment in *Gosa* that "petitioner was not tried by a kangaroo court or by eager vigilantes but by military authorities within the framework established by Congress in the Uniform Code of Military Justice" 413 U.S. at 689, 93 S.Ct. at 2941, supports this view.

Mr. Justice Blackmun agreed that the question of *O'Callahan* had been "whether . . . the exercise of jurisdiction

---

3. As a matter of *statutory* construction, this has been held to embrace military jurisdiction over a member of the armed forces who committed a crime against a German civilian in Germany. Puhl v. United States, 376 F. 2d 194 (10 Cir. 1967).

by a military tribunal, pursuant to an act of Congress, over his nonservice-connected offense was appropriate when balanced against the important guarantees of the Fifth and Sixth Amendments." 413 U.S. at 677, 93 S.Ct. at 2935. He rejected the notion that *O'Callahan* had held "that a military tribunal was and always had been without authority to exercise jurisdiction over a nonservice-connected offense." *Id.* Mr. Justice Marshall's opinion, on the other hand, said that *O'Callahan* "can only be understood as a decision dealing with the constitutional limits of the military's adjudicatory power over offenses committed by servicemen." 413 U.S. at 694, 93 S.Ct. at 2943.

With Mr. Justice Rehnquist wishing to overrule *O'Callahan* entirely, there seems to be a clear majority which believes that *O'Callahan* does not hold that there is an absolute lack of jurisdiction in military tribunals to try servicemen for nonservice-connected offenses.

We in turn, then, adapt the technique of *O'Callahan* to determine the issue here presented. Is there an imbalance between Art. I, § 8, cl. 14 jurisdiction over soldiers who commit civilian offenses in peace time and the requirements of Article III and the Fifth and Sixth Amendments?

■ We may assume first that the cases prohibiting the trial of civilians by military tribunals, cf. Reid v. Covert, supra, 354 U.S. at 81, 77 S.Ct. 1222, are not controlling, for appellant was not a civilian. We may also assume that Williams, as a soldier, came under the Art. I § 8 cl. 14 power of the Congress to regulate the land and naval forces. Reid v. Covert, supra, 354 U.S. at 20, 77 S.Ct. 1222. Nor do we doubt the power of the Congress to provide for the regulation of the land and naval forces when they are serving in foreign countries. Schooner Exchange v. McFaddon, 11 U.S. (7 Cranch) 116, 139–140, 3 L.Ed. 287

(1812); Coleman v. Tennessee, 97 U.S. 509, 515, 24 L.Ed. 1118 (1878).

In United States ex rel. Toth v. Quarles, 350 U.S. 11, 23, 76 S.Ct. 1, 8 L. Ed. 8 (1955), the Court did instruct us, however, that "[d]etermining the scope of the constitutional power of Congress to authorize trial by court-martial presents another instance calling for limitation to 'the least possible power adequate to the end proposed.' Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 230–231 [5 L.Ed. 242] (1821)."

Recognizing the *jurisdiction* of our military courts in Germany to try military personnel for crimes committed there, the question is whether the power "would be adequate to the end proposed" if servicemen were immune from court-martial for civilian offenses committed abroad in peace time.

■■ The conflict between the individual right to be indicted by a Grand Jury (Fifth Amendment) and trial by jury (Sixth Amendment), on the one hand, against the court-martial jurisdiction, on the other hand, depends in the first instance on whether the individual rights sought to be preserved are available to the accused. In the *O'Callahan* case, the crime was committed in Hawaii, then a territory of the United States, where the right of jury trial and indictment by Grand Jury were available.[4] Here the crime of robbery was committed in Germany. While constitutional rights may follow the soldier abroad, the Constitution itself does not provide him with an Article III federal court in the vicinage where he may be tried. Nor is robbery in a German city a federal crime presently cognizable by Article III courts. See United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922).

Even though pursuant to the Constitution in Art. III, § 2, cl. 3, the Congress can provide that where a crime is committed in no state, the defendant may be tried in the district to which he

---

4. The Hawaii Constitution, Art. 1, §§ 8, 11, adopted in 1950, required indictment by a Grand Jury and trial by jury.

is first brought (18 U.S.C. § 3238) (Reid v. Covert, supra, 354 U.S. at 8, 77 S.Ct. 1222), there must still be federal criminal jurisdiction for a trial properly to occur in an Article III court. While Germany has agreed to consider waiving jurisdiction over the soldier where the crimes are in concurrent jurisdiction, NATO Agreement on Status of Forces, Art. VII(3); 4 U.S. Treaty Series 1792, 1800 (1953), it could not, of course, create a system of American courts for his trial.[5] Under the treaty, the United States courts were assumed to be military courts. The Congress has neither provided for Article III Courts nor even for legislative courts to function in Germany; nor made the *crime* of robbery in Germany a federal crime, except as provided in the Code of Military Justice (10 U.S.C. § 922).

The Supreme Court in *Relford, supra,* noted that *O'Callahan* had involved an offense committed "within our territorial limits [and] not in the occupied zone of a foreign country." 401 U.S. at 365, 91 S.Ct. at 655. We think that the emphasis on individual rights in *O'Callahan* implied their application only within our territorial limits, and that it is not of consequence that Germany does not happen to be an "occupied zone of a foreign country," *Relford, supra,* but a foreign country not under occupation.

Toth v. Quarles, *supra,* concerned a civilian who had been discharged from the Army, and held that, *as a civilian,* he could not be tried by the military for a murder allegedly committed in Korea while he was in the service. The question involved did not relate to the fact that the alleged crime had been committed in a foreign country. The holding was that, having regained civilian status, he was not constitutionally amenable to military jurisdiction under Con-

gressional power to regulate the armed forces. We think the constitutional defect was of status, not of situs. *Toth* did not concern itself with territorial jurisdiction.

Since *O'Callahan,* the Fourth and Seventh Circuit Courts of Appeals, the Court of Claims and the Court of Military Appeals have each concluded by independent reasoning that there is no constitutional prohibition against the power of Congress to provide in a Code of Military Justice that general courts-martial shall try servicemen for offenses committed in foreign countries which are, concededly, not service connected. Wimberly v. Laird, 472 F.2d 923 (7 Cir. 1973); Bell v. Clark, 437 F.2d 200 (4 Cir. 1971); Gallagher v. United States, 423 F.2d 1371, 191 Ct.Cl. 546 (1970), cert. denied, 400 U.S. 849, 91 S. Ct. 58, 27 L.Ed.2d 86 (1970); United States v. Keaton, 19 U.S.C.M.A. 64 (1969).

█ We think the Congress has the constitutional power under Art. I § 8 cl. 14 "to make Rules for the Government and Regulation of the land and naval Forces," that such rules may provide for courts-martial and that there is no territorial limitation on where they may sit.

We are left then with the question whether the limitations in the Fifth and Sixth Amendments must be applied, nevertheless, to limit that jurisdiction.

The Court of Appeals for the Seventh Circuit in Wimberly v. Laird, *supra,* has held that because the soldier was in Germany as the result of his status as a member of the Army, there was a sufficient connection between his offense and his service status to characterize his crime as "arising within the land or naval forces" for purposes of the exception

---

5. The Agreement confers on each respective government exclusive jurisdiction over crimes which are cognizable under that government's law, but which are not cognizable under the law of the other government. Concurrent jurisdiction between the sending and receiving states is recognized over all

other crimes with the primary jurisdiction allocated according to the nature of the crime. In the case of robbery, Germany had primary jurisdiction which it waived. The waiver provision is valid. See Wilson v. Girard, 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed. 1544 (1957).

in the Fifth Amendment.[6] We agree.[7] The United States Army could hardly disinterest itself in crimes of violence committed against civilians by military personnel without impairing its mission. *Gallagher v. United States, supra,* 423 F.2d at 1373.

And so far as the Sixth Amendment is concerned, there can literally be no "trial by an impartial jury of the State and district wherein the crime shall have been committed," for no federal courts exist in Germany, and trials in the United States would not, in any event, have juries "of the State and district wherein the crime was committed."

■ The choice is, practically, between trial in a German civilian court and trial by an American court-martial. The witnesses are in Germany. To require their transportation to the United States is, in any event, beyond our power to command, for they are not subject to our process. It was undoubtedly thought a boon to the accused to permit his trial in a court-martial rather than in a foreign court where the soldier might be subjected to varying degrees of xenophobia. But assuming that the soldier feels, on the contrary, that he may be better off in a foreign court than in an Article I court-martial, there is no constitutional guarantee that says he has a right to be tried in the foreign court.[8] Pursuant to the treaty power, the United States has given Germany priority in the trial of offenses committed within its territory, and reserved to itself, if there is a waiver, trial in the military tribunal, which is the only United States court available. We think

there was no mandate on the Congress to create Article III courts to be the repositories of the concurrent jurisdiction with Germany under the treaty, even if the obvious international obstacles to their creation were overcome.

Affirmed.

---

6. Although the nation is not in a "time of war or public danger," that limit to the exception of the Fifth Amendment from courts-martial applies only to the militia, and not to "the land or naval forces." Johnson v. Sayre, 158 U.S. 109, 115, 15 S. Ct. 773, 39 L.Ed. 914 (1895); see also Ex parte Mason, 105 U.S. 696, 701, 26 L.Ed. 1213 (1881).

7. The history of the statutory jurisdiction of courts-martial to try civil offenses committed by the military is recited in *O'Callahan, supra,* 395 U.S. at 271–272, 89 S.Ct. 1683.

8. Cf. Wilson v. Girard, *supra,* where the Supreme Court held that there was no constitutional right *not* to be tried in a foreign court. One cannot help wonder whether appellant at the time of his trial would have chosen a German court rather than an American military court. For a discussion of the acceptability of foreign civil courts as alternative tribunals, see Note, Military Law —Military Jurisdiction over Crimes Committed by Military Personnel Outside the United States, 68 Mich.L.Rev. 1016, 1039 (1970).